ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

MINNIE BACHES, Administratrix.

1. NEGLIGENCE—*in railroads—mode of switching cars.* A railroad company, in transferring two empty platform coal cars from the main to a side track, employed the mode known as the "running" or "flying switch," which is done by attaching the cars designed to be thrown upon the side track to the engine, when the train is put in motion running toward the switch, and before it is reached, and when sufficient momentum to answer the purpose has been acquired, the engine is detached and run ahead of the train, and after it passes, the switch is changed, and the cars thus detached, by the momentum thus acquired, are carried along the side track to the point intended, it was *held*, in thus switching their cars in a populous part of a city of ten or twelve thousand inhabitants, crossing a traveled

street and along an alley used by the public, the cars thrown upon the side track having a momentum which carried them at the rate of five miles an hour, the company were guilty of a high degree of negligence, and of which the fact that signals of alarm were given from the engine employed in the switching, intended for a person crossing the side track, who was injured by the cars, would not excuse them.

2. And it was gross negligence on the part of the brakeman on the train not to be at the brakes to respond to the signal of "down brakes," given by the engineer, or being there, in failing to put on the brakes. As the company had adopted such dangerous mode of switching, it was imperative that the brakeman should have been so situated as to see in front of his train, and to have had full command of it, so as to have guarded, as far as possible, against inflicting injury.

3. CONTRIBUTORY *and comparative negligence.* In an action against a railroad company to recover for the death of a person occasioned by the alleged negligence of the defendants, an instruction which directed the jury, that in case they believed, from the evidence, that both the deceased and the agents and servants of the company were guilty of gross negligence contributing to the injury, they should find for the defendants, was *held*, to be proper, as embodying a correct legal proposition—that where both parties are guilty of gross negligence, as a general rule, liable, it may be, to some exceptions, the plaintiff can not recover—and it was error for the court to modify it, no circumstances appearing in the evidence that called for or upon which to base the modification.

4. Although the deceased in such case was guilty of negligence contributing to the injury, yet, if the defendants were guilty of a higher degree of negligence, with which, when compared, that of the deceased was greatly disproportionate or slight, the plaintiff might still recover. But if the negligence of deceased was equal to that of defendants, a recovery can not be had. Being the duty of the former to use prudence and care, if he failed to do so, and was guilty of negligence, to authorize a recovery, the negligence of the defendants must be clearly and largely in excess.

5. Every person of ordinary intelligence is bound to know that a railroad crossing over a public highway, where cars are frequently passing, is a place of more than ordinary danger, and should use, at such place, greater precaution to avoid injury than at a place of less hazard. While all persons have a right to cross a railroad track at its intersection with a public highway, it is their duty to do so with all reasonable dispatch, and it would be negligence in an intelligent person to be on the track of a railway constantly used, unless for the purpose of crossing the same.

6. If a person travel along a railroad track where cars are frequently passing, even for the purpose of crossing a public highway, unless the highway is so obstructed as to render it necessary to follow the railroad track, he is guilty of such negligence as will prevent a recovery for any

injury he may receive, unless there is a higher degree of negligence contributing to the injury on the part of the employees of the road.

7.  DAMAGES—*death resulting from negligence.*  In an action under the statute to recover for the death of a person caused by the wrongful act, neglect or default of the defendant, the only question to be determined in estimating the damages, is the pecuniary loss resulting from his death to the widow and next of kin of such deceased person. The feelings of the widow and next of kin, their wealth or poverty, or any other fact than the pecuniary injury, can not be considered in assessing the damages. The fact that the widow is deformed and disabled can, in no wise, increase or diminish the amount of damages she may be entitled to recover.

8.  SAME—*in estimating measure of, for pecuniary loss.*  In such case the support the widow would have been likely to receive from her husband, had he not been killed, is a proper and the controling element to be considered by the jury in arriving at the measure of compensation for the pecuniary loss sustained.

APPEAL from the Circuit Court of Lee county; the Hon. W. W. HEATON, Judge, presiding.

The opinion states the case.

Mr. J. M. BAILEY and Mr. B. C. COOK, for the appellants.

Mr. H. C. HYDE and Messrs. EUSTACE, BARGE & DIXON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This suit was brought by the widow, as the administratrix, of Jacob Baches, deceased, against appellants, to recover damages for causing his death. The venue was changed from Stephenson county, where the suit was commenced, to Lee county. At the December term, 1869, a trial was had by a jury, resulting in a verdict for $4000 against appellants, upon which a judgment was rendered, after overruling a motion for a new trial, and the record is brought to this court, and various errors assigned.

It appears that deceased received the injuries complained of and from which he died, about the fourteenth of March, 1869, by being run upon by the cars on appellants' road, under the management and control of their servants, on a turn out track in the city of Freeport, known as "Manny's switch track." He died of the injuries thus received the same evening, leaving a widow and an infant child surviving him. It appears appellee is administratrix of his estate.

The Manny switch track connects with appellants' main track, and they run nearly parallel from the point of intersection to the south side of Jackson street, a distance from the point of intersection of 238 feet, being but fifteen feet apart from centre to centre at that point, the course of both tracks from their junction being northwesterly. The switch, after crossing Jackson street, which is sixty-six feet wide, curves rapidly to the south, and passes up an alley sixteen feet wide, between Jackson and Spring streets, till it intersects with Adams street, where it terminates. The switch was built by the citizens of Freeport, but afterwards passed into the hands of Manny & Pattison. It appears from the evidence that this alley was used by the citizens to pass up and down, and that Jackson street was used for the same purpose, and in crossing from one side to the other.

On the evening of the injury, deceased, in company with Strata, in coming from their work, on entering the city, and as they were in the act of crossing the main track on the culvert, was stopped by a train going southward, the engine pushing before it two empty platform coal cars. After the engine had passed, deceased and Strata crossed the track, and passing on the Manny track, walked along the same into Jackson street, as appellee contends, and deceased was there overtaken and killed by the two coal cars, sent thither by what is called a running switch.

Appellants insist, that deceased was on the railroad track south of the street when he was struck, and hence was at a

place where he had no right to be when he received the injury, while appellee insists, that the evidence shows that he was in the street, and where he had an undoubted right to travel, when the injury was inflicted. On this question the evidence is conflicting, and as the case must be passed upon by another jury, we deem it proper that we should not comment upon it, but leave it to be considered by the jury, unbiased by our opinion of its weight.

It appears that after being struck, deceased was dragged by the cars to the north side of the street. The engine driver, who was passing up the main track, on seeing the cars approaching deceased, sounded the whistle for brakes, but the brakeman on the coal cars did not check them up so as to save deceased from the injury.

It is, no doubt, necessary for railroad companies to transfer their cars from one track to another, so as to reach warehouses to receive and discharge freight and to make up trains. There are various modes in use by which such transfers are made, and observation teaches that some are safe, while others are hazardous to life, in cities and thoroughfares. The mode usually employed is to draw or push them by an engine, to which they are attached, and being thus constantly and entirely under the control of the engine driver, who has at his command well known signals to give warning of immediate danger, and can almost instantly stop his engine when progressing at a safe rate of speed. This is the most commonly adopted mode, because it is convenient for those operating the road, and when carefully performed is safer to the community. There are other safe modes, but perhaps less convenient and not so expeditious.

The mode adopted in this case is called a "running" or "flying switch." It is performed by attaching the cars to be thrown upon the other track to the engine. The train is then put in motion, running toward the switch, and before it is reached, and when sufficient momentum to answer the purpose has been acquired, the engine is detached, passes on the main

track, and after passing, the switch is changed, and the cars thus detached, by the momentum thus acquired, are carried along the side track to the point intended.

It seems, from the evidence in this case, that the cars thrown upon the Manny track had a momentum which carried them at the rate of five miles per hour when they struck deceased.

Was it negligence to thus switch these cars? It was done in a populous part of à city of ten or twelve thousand inhabitants; crossing a traveled street, and along an alley used by the public. To cut loose and send such a dangerous train into a city, across and along public thoroughfares, silent in its approach and dangerous in its force, seems to be a high degree of negligence. It would seem to be fraught with great danger to the lives of citizens. Persons are liable at all times to be on the streets, and have a right to be there, and a right to insist that those using dangerous engines and constructions on the streets, shall observe the degree of care which such a hazard renders necessary to secure the safety of persons on such highways, used in common by the public and the corporation.

Whatever theory witnesses may advance, the very nature of things, and the dependence one thing has upon another, render it perfectly apparent that such a mode of switching is, nor can it be otherwise than hazardous, when performed in a populous city, in the manner the evidence shows this to have been done. It was unaccompanied by the controling power of the engine. Can any one entertain the shadow of a doubt, that had the cars been drawn on the track by the engine, the driver, if at all attentive to his duty, could have checked up the train in time to have saved deceased from injury, had the latter failed to regard the usual signals. It seems to us almost self-evident that he could. Deceased, having seen the engine and cars go down the road, did not, in all probability, suppose the cars had been detached, and it did not occur to him that the signals given by the engine on the other track

were intended to warn him of danger, but he probably supposed they were to warn persons on the other track. But had the cars been drawn by the engine, and the signal given behind him, he would almost certainly have heeded it.

It is true, in this case there was a brakeman on these cars, but it appears he was not at the brakes to respond to the signal of "down brakes," given by the engineer. He might as well have been on the engine, or off the cars, for all the benefit resulting from what he did. Had he been at the brake, and had he been obedient to the signal, he might, and probably would, have been able to save the life of deceased. But he was not at his post, or failed in putting on the brakes if he was. In this there seems to have been gross negligence. The brakeman should have been so situated as to see in front of his train, and to have had full command of it, so as to have guarded, as far as possible, against inflicting injury. This was imperative, as the company had adopted this dangerous mode of switching.

We now come to the consideration of the instructions given and refused, upon which complaint is made by appellants. It is insisted the court erred in modifying the seventh of appellants' instructions. As asked it was this:

"In case the jury believe, from the evidence, that both the said Jacob Baches and the agents and servants of the defendants were guilty of gross negligence, contributing to the injury of which said Jacob Baches died, the jury are instructed to find their verdict for the defendants."

The majority of the court hold this instruction, as asked, to be proper, as embodying a correct legal proposition, that when both parties are guilty of gross negligence, as a general rule, liable, it may be, to some exceptions, the plaintiff can not recover. It was, therefore, improper to modify it. No circumstances appear in the evidence that called for or upon which to base the modification.

25—55th Ill.

It is next urged, that the court erred in refusing to give appellants' eleventh instruction, which is this:

" Every person of ordinary intelligence is bound to know that a crossing of railroad track over a public highway, when cars are frequently passing, is a place of more than ordinary danger, and it becomes his legal duty at such place to use corresponding care and caution to avoid injury; and while it is true that the public have a right to be upon a railroad track, at the crossing of a public highway, for the purpose of crossing over such track, it is the duty of all persons crossing over such track to do so with all convenient dispatch; and if the jury believe, from the evidence, that in this case the deceased, Jacob Baches, was upon the track of the defendants' railroad, not for the purpose of crossing over the same, but for the purpose of employing the same as a foot path from his place of labor to his residence, it was negligence on his part to employ such railroad track for such a purpose, even though the jury should believe, from the evidence, that at the time he was so injured by defendants' cars, he had actually proceeded to, and arrived at, a point within the boundaries of a public highway."

No objection is perceived to this instruction. It is evident that a place where a railway crosses a common highway is of more than ordinary danger, when cars are frequently crossing at that point; and it is evident that all persons of ordinary intelligence should use greater precautions to avoid danger, than at a place of less hazard. While all persons have a right to cross the railroad track at the intersection of the two ways, it is the duty of such persons to do so with all reasonable dispatch, and it would be negligence in an intelligent person to be on the track of a railroad constantly used, unless for the purpose of crossing the same. These principles are fairly and clearly announced by this instruction, and it should have been given.

The next instruction asked by appellants, and refused by the court, was the nineteenth, and is this:

" Although the plaintiff's intestate had a legal right to walk across the railroad track of the defendants, where the same crosses a public highway, still, if the jury believe, from the evidence, that at the time of his receiving the injury of which he died, he went upon said track outside of the boundary of any public highway, and walked along said track to such highway, and thereupon continued to walk along and upon said track within the boundary of such highway, with the intention of continuing to walk along and upon said track, across said highway, to and along the said track without and beyond the boundary of such highway, and that such highway was unobstructed on either side of said track, so that he might have crossed said highway as well without walking upon said track, such facts are evidence for the jury to consider, and from which they may find that said intestate was guilty of negligence in attempting to cross said highway, upon and along said track; and if the jury further find, from the evidence, such negligence on the part of said Jacob Baches, and that, by means of such negligence, he was run against by a car of the defendants, and thereby received the injury of which he died, the jury should find for the defendants, unless they believe, from the evidence, that defendants' servants or employees were, at the same time, guilty of gross negligence, in comparison to which the negligence of said Jacob Baches was but slight, and that such gross negligence also caused such injury."

No material objection is perceived to this instruction. It correctly states that it is negligence to travel along a railroad track where cars are frequently passing, even in crossing a highway, unless the highway is so obstructed as to render it necessary to follow the railroad track, and that it is such negligence as will prevent a recovery, unless there is a higher degree of negligence on the part of the employees of the road.

Appellants asked, and the court refused to give, this instruction :

" The pecuniary circumstances of the plaintiff and her infant daughter, at the time of and since the death of said Jacob Baches, can not increase or diminish the amount of damages which the plaintiff is entitled to recover in this suit, in case the jury find the issue for her, and if the jury so find, they are instructed, in the assessment of damages, to disregard all the testimony as to the pecuniary circumstances of said plaintiff and her infant daughter, at the time of and since the death of said Jacob Baches."

This instruction should have been given. The object of the act under which this action is brought, is to give compensation for the pecuniary loss sustained by the widow and next of kin. The law expressly declares, that the "jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person, not exceeding the sum of $5000." The language of this enactment limits the damages to the pecuniary loss. All other injuries and losses are excluded by the language employed. The action is of statutory creation, and it must be governed and controlled by the statute. This is the construction given to this law, and it can not fairly receive any other. The feelings of the widow and next of kin, their wealth or poverty, or any other fact than the pecuniary injury, can not be considered in assessing the damages.

The twenty-seventh of appellants' instructions was refused. It is this :

" If the jury believe, from the evidence, that the plaintiff, at the time of the death of said Jacob Baches, had a deformity of her left hand, partially impairing the use of said hand, and that such deformity had existed from the time of her birth,

such fact can not increase or diminish the amount of damages which she will be entitled to recover in this suit, in case the jury find the issue for her, and if the jury should find the issue for the plaintiff, they are instructed, in the assessment of damages, to disregard all the testimony in the case as to such deformity."

This instruction was proper, and should have been given by the court. It, like the preceding instruction, properly excluded an improper element from the consideration of the jury in assessing damages. The only question for the jury is the pecuniary injury sustained by the death of the deceased, and that can not, in the remotest degree, depend upon whether the widow is disabled. She may not, for that reason, be able to earn as much as if she were not disabled, but appellants are in nowise liable for her misfortune, and are not bound to contribute to relieve her from the consequences of that disability. They did not produce it, and are not liable to relieve her against the results it may produce. How she has lost more money by being crippled than if she had not been, by the death of her husband, is not, to our minds, in anywise apparent. The question is, how much has she lost in a pecuniary view, and the jury should be required to assess damages, in this class of cases, alone on that basis. The court erred in refusing this instruction, as there was evidence before the jury calculated to mislead them in assessing damages.

The seventh of appellee's instructions is not accurate, as it nowhere limits or defines the duty of deceased. Under this instruction, the jury were required to find for the plaintiff, although deceased might have been guilty of negligence equal to that of appellants. Such has never been recognized as the rule of law in this class of cases. This court refused to follow those authorities which hold, that if a plaintiff is guilty of any negligence which contributes to the injury, he could not recover, but announced the rule, that although he might be guilty of negligence, still, if the defendant was guilty of a higher

degree of negligence, which, when compared with that of the plaintiff, that of the latter was greatly disproportioned or slight, he still might recover. But we are not inclined to extend the rule, as there is no warrant in the common law for allowing the plaintiff any greater latitude. He should use prudence and care, but failing to do so, and is guilty of negligence, he can not recover, unless the negligence of the defendant clearly and largely exceeds his. This instruction should have been refused, or modified so as to announce the rule of comparative negligence before it was given.

It is urged, that the first of appellee's instructions is erroneous, in permitting the jury to take into consideration the support the widow and minor would have been likely to receive had deceased not have been killed. That is a fair, and, no doubt, the controling element to be considered in fixing the pecuniary loss sustained. It is the loss of that support which more largely produces the pecuniary injury than any other, and hence it is eminently proper that it should be considered. The law imposes upon the husband the duty of supporting the wife, and hence, by his death, she sustains a pecuniary loss, and that being so, it is a proper element to be considered by the jury in assessing damages. But, for the errors indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*