The Chicago, Peoria and St. Louis Railroad Co.

*v.*

Charlotte Woolridge, Admx.

*Opinion filed October 24, 1898.*

1. INSTRUCTIONS—*peremptory instruction asked in a series may be refused.* A peremptory instruction for defendant, requested along with others of his series, is properly refused.

2. DAMAGES—*the pecuniary circumstances of lineal kindred is immaterial.* In estimating the damages sustained by lineal kindred from death occasioned by a wrongful act, the poverty, wealth, helplessness or dependence of such lineal kindred is not to be considered.

3. SAME—*damages to lineal kindred limited to pecuniary loss sustained.* The amount of damages sustained by lineal kindred from death occasioned by a wrongful act is limited to the pecuniary or property interest of such kindred in the life of the deceased.

4. EVIDENCE—*in action for wrongful death, evidence of condition of lineal kindred is inadmissible.* In an action by an administratrix for the wrongful killing of her intestate it is material error to admit evidence that an adult son of the deceased was a cripple, unable to do hard work, and dependent upon the deceased for support.

*C., P. & St. L. R. R. Co.* v. *Woolridge,* 72 Ill. App. 551, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

BLUFORD WILSON, and PHILIP BARTON WARREN, for appellant.

S. H. CUMMINS, and CONKLING & GROUT, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This action was brought by Charlotte Woolridge, as administratrix, to recover damages, under the statute, for the death of her intestate, John A. Woolridge, occasioned, as alleged, by the negligence of the defendant in the operation of its train of cars.

A summary of the main facts is: The deceased was a flagman for the Chicago and Alton Railroad Company. That road and the defendant road had constructed extra tracks from their main lines to the State Fair Grounds, at Springfield, Illinois, both entering such grounds at the south-east corner. The tracks were parallel, on a curve, for a short distance before reaching such grounds, the curve of the defendant's track being continuous from the point at which it left the main track until it reached such entrance. The tracks of both roads, a short distance from the fair grounds, crossed, parallel with each other, on a curve from about the south-east to the north-west, two public highways, at their right angle intersections, called Sangamon avenue and Peoria road, and then extended nearly due north into such grounds. The track of the defendant was east of the Chicago and Alton track, and at the place of the accident there was a distance of nine feet and four inches between the inside rails of the two roads. The business of the deceased was to flag the Chicago and Alton trains and to assist in guarding such highway crossings. His station was on the west side of

the Chicago and Alton track, which was west of the defendant's track. The defendant also had a flagman, whose location was on the east side of its track. A train on the Chicago and Alton track was, at the time of the accident, coming out of the fair grounds, and the deceased was warning people who were about to pass over such highways, and while doing so, for some purpose unexplained, got between the two tracks where they were nine feet and four inches apart, over which rails of each track a car would project some eighteen inches, thus leaving six feet and four inches between the cars of trains passing each other at that point. As the Chicago and Alton train approached deceased, leaving the grounds, he stepped backward on the track of the defendant, when its train backing down, with trainmen on the rear end, running at a speed of from probably eight to twelve miles an hour, struck him and thereby caused his death. The plaintiff obtained a verdict and judgment, which were affirmed by the Appellate Court.

The deceased left surviving him the plaintiff, his widow, and seven children, three of whom lived with their father and four had their own homes. All of the children were of age. Clarence Woolridge, who lived with his father, was so crippled by rheumatism that he was unable to work. The admission of proof of this fact and of his dependence on his father for support, over the objection of the defendant, is one of the errors assigned, and of which serious complaint is made. Other errors assigned relate to the giving and refusing of instructions, especially No. 29, which, in a series of forty-six offered by the defendant, required the jury to find a verdict for the defendant. There was no motion or instruction offered at the close of the plaintiff's evidence, or renewed at the conclusion of defendant's evidence, to have the jury instructed to find defendant not guilty, but, as stated, instruction No. 29 was offered in connection with a series which submitted all the facts to the determination of the

jury, whereby the defendant waived its right to ask such an instruction as No. 29, and therefore no error was committed in refusing it. (*Peirce* v. *Walters*, 164 Ill. 560; *Vallette* v. *Bilinski*, 167 id. 564; *Calumet Electric Street Railway Co.* v. *Christenson*, 170 id. 383.) Hence, the sufficiency of the evidence to support the verdict and judgment is not raised by this record as a proposition of law.

The most serious question is that relating to the admission of the following evidence of Clarence Woolridge:

Q. "If you have any bodily infirmity, tell the jury what it is.

(The objection by defendant to this question was sustained, but the court remarked, "You may ask him if he was dependent on his father for support.")

Q. "Now, Clarence, if you were dependent upon your father for support you may tell the jury.

(This question was objected to, overruled and exceptions taken.)

A. "Yes, I am not able to do no hard work—no work of any kind.

Q. "If you are crippled, tell the jury how.

A. "I am crippled here—rheumatism in my right hip.

(To which objection was made by defendant; overruled by the court and exceptions taken.)

Q. "Unable to work, are you, and earn a living?

A. "Yes sir."

That such evidence would have a very strong tendency to enlist the sympathy of the jury, and thereby tend to affect not only the amount of the verdict, but also to affect the judgment of the jurors as to a liability, is very clear. This evidence was admitted on the theory that, under the law, this crippled son was in need of help on account of his helpless condition, and therefore had been supported, and was legally entitled to be supported, by his father *because* of such condition.

It is said in support of this position, that in order to recover more than nominal damages the proof must show

the next of kin were supported, in whole or in part, by the deceased, or that the deceased was bound by law to support them because they were in a state of dependence. As to Clarence Woolridge, it is further said, without this state of dependency his father would not have been bound by law to support him, as he was over twenty-one years of age, and therefore this evidence is said to be material to *enhance* the damages. This view of the law is not in accord with the rule laid down by this court in relation to a recovery by lineal next of kin. This action is based on chapter 70 of the Revised Statutes. Section 1 gives an action for a wrongful act causing death, while section 2 prescribes in whose name the action shall be brought and for whose benefit, and limits the damages "to the *pecuniary* injuries resulting from such death to the wife and next of kin of such deceased person." The personal representative brings the action as trustee for those who have such *pecuniary interest in the continuance of the life* of the deceased, and not in right of the estate, (*City of Chicago* v. *Major*, 18 Ill. 349; *Holton* v. *Daly*, 106 id. 131;) and, as provided by section 2, "the amount recovered   *   *   * shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate."

This act has been construed (1) that "next of kin" means those standing in that relation in a technical sense.—*Chicago and Alton Railroad Co.* v. *Shannon*, 43 Ill. 338. (2) That if the next of kin are collateral, it is a material question whether they were in the habit of claiming and receiving pecuniary assistance from the deceased. If they were not, they can only recover nominal damages. If they were lineal, the law presumes pecuniary loss from the fact of death.—*City of Chicago* v. *Scholten*, 75 Ill. 468; *Chicago and Northwestern Railroad Co.* v. *Swett*, 45 id. 197. (3) That the amount of the recovery is limited to the "pecuniary

loss."—*North Chicago Street Railroad Co.* v. *Brodie*, 156 Ill. 317, where cases on this point are reviewed, and where, on page 320, quoting from *Conant* v. *Griffin*, 48 Ill. 410, it is said: "This action is the creature of the statute,   *   *   * and as they only provide for compensation for the pecuniary loss, *the evidence should be confined exclusively to that.*" (4) "Pecuniary loss" is held, as to lineal kindred, to mean what the life of the deceased was worth in a pecuniary sense to them,—*Chicago and Alton Railroad Co.* v. *Shannon, supra, Quincy Coal Co.* v. *Hood,* 77 Ill. 68,—which pecuniary loss, it is said in the *Brodie case,* "can be easily determined," in case of lineal kindred, as said in *City of Chicago* v. *Scholten, supra,* "by proof of the personal characteristics of the *deceased,*" his mental and physical capacity, his habits of industry and sobriety, the amount of his usual earnings, by proof of "what he might, in all probability, earn for the future support of his wife and children; in this consists essentially the loss to the family,"—*Illinois Central Railroad Co.* v. *Weldon,* 52 Ill. 290, at p. 296,—or, as put in *Jury* v. *Ogden,* 56 Ill. App. 100 (on p. 104): "The amount to be recovered is what the statute regards as the pecuniary value of the addition to such estate left as the deceased, in reasonable probability, would have made to it, and left, if his death had not been so wrongfully caused.   It is to be estimated by the jury from all the facts and circumstances proved,—his prospect of life, and his means, opportunities, ability and habits, with reference to the making and saving of money or money's worth."

The poverty, wealth, helplessness or dependence of the lineal next of kin is immaterial on the question of the amount of the recovery under this statute.   That feature is not at all to be considered in measuring or estimating the loss sustained, or in determining the liability, in case of lineal kindred, when there is death caused by a wrongful act.   In *Chicago and Northwestern Railroad Co.* v. *Moranda,* 93 Ill. 302, it is said (p. 304): "It was wholly immaterial whether such next of kin had or had not other pecuniary

resources after his death. Such evidence was held incompetent in *O'Brennan's case,* 65 Ill. 160, and in *Powers' case,* 74 id. 343." In the *O'Brennan case, supra,* it will be found O'Brennan was seeking to recover damages for a personal injury, and he was permitted to testify that he was a *supporter of his family* as a lecturer. This was held to be immaterial, and the court, in commenting on such evidence, say (p. 163): "If it was admissible, then it would have been competent to have gone farther, and shown all the circumstances of the family,—such as that the mother was an invalid; that one of the daughters was blind; that one son had accidentally lost a leg, etc., if such had been the case, so as to present a most pitiable picture of a helpless family dependent upon appellee for support as a lecturer, for, as the evidence had no place in the case but as a stimulant to the sympathy of the jury, it would be just as competent to make the stimulant strong as weak." (See, also, *Pittsburg, Fort Wayne and Chicago Railway Co.* v. *Powers, supra.*) In *Illinois Central Railroad Co.* v. *Baches,* 55 Ill. 379, it is said: "The feelings of the widow and next of kin, their wealth or poverty, *or any other fact than the pecuniary injury,* cannot be considered in assessing the damages."

The number and ages of the family are not material, as has been held, where the relation is lineal, as the sole measure of damages is pecuniary loss,—that is, how much would the deceased, in all probability, have added to the estate had he lived, which amount would not be affected by the number or ages of such kindred, as each would only get his proportionate share as provided by law for the distribution of the personal property of an intestate, without being increased or diminished, *as to any one of them,* on account of poverty, age or physical condition. As to lineal heirs, as in this case, the authorities above clearly show the injury for the wrongful death is limited to the pecuniary or property interest of such kin in the life destroyed. It cannot be enhanced or diminished by showing the poverty, wealth or physical helplessness of any

of such kindred.    To permit that to be done would be to make this defendant, for illustration, assume the burden of such conditions, if unfortunate, which is not contemplated by the statute.  (*Pittsburg, Fort Wayne and Chicago Railway Co.* v. *Powers, supra,* cited in *Moranda case, supra.*) For these reasons it was material error to admit evidence that Clarence Woolridge was a cripple, unable to work, and that he depended on his father for support.    The question is not, under this statute, as to lineal kindred, how many there were, or their mental or physical condition, but is, solely, how much would *the deceased* have been worth to them, in all reasonable probability, had he continued to live,—which fact, as said in the *Brodie case, supra,* is easily ascertainable by proof as above indicated.

The first instruction given for the plaintiff is subject to criticism because it did not limit the amount of recovery to the pecuniary injury sustained.    (*City of Chicago* v. *Scholten, supra.*)    The error is not deemed to be harmless by reason of the reference to such pecuniary injury in the second instruction, especially in view of the improper evidence admitted, heretofore referred to, and the proof as to care on the part of the deceased, which makes the case very close, if not, in fact, doubtful.

It is not deemed necessary to review the numerous instructions offered by the defendant and refused.    Counsel well understand this court has never approved the practice of burdening the trial court with so many instructions. The court gave eighteen of the forty-six instructions offered, which substantially cover the law of the case.

For the errors indicated the judgments of the circuit and Appellate Courts are reversed, and the cause remanded.                          *Reversed and remanded.*