|     |     |
| --- | --- |
| 99  | 563 |
| 115 | ³117 |

## Chicago Terminal Transfer R. R. Co. v. Mathias Helbreg, Adm'r.

1. PLEADINGS—*In Actions for Damages Sustained by Reason of the Death of a Person from Negligence.*—In an action for damages sustained by reason of the death of a person by the negligent acts of another, the fact as to whether the deceased left a widow or next of kin, must be alleged in the declaration and proved as alleged.

2. AMENDMENTS—*Where a Declaration Fails to State that a Person Killed by the Negligence of Another, Left Next of Kin Surviving Him.*—In an action by the next of kin for damages sustained by reason of the death of a person from the negligent act of another, where the declaration fails to state that such deceased person left surviving him a widow

or next of kin, an amendment after the trial and while a motion for a new trial is being heard, for the purpose of remedying such defect, is properly allowed, where such amendment aims at nothing but perfecting the declaration, so as to enable the plaintiff to recover upon the cause of action already, but imperfectly stated.

3. DAMAGES—*Where $1,500 is Excessive.*—In an action under the statute against a railroad company for negligently causing the death of a person eighty-one years of age a judgment for $1,500 is excessive.

4. REMITTITUR—*Does Not Always Cure an Excessive Verdict.*—In an action by the next of kin of a person alleged to have been killed through the negligence of a railroad company a verdict of $5,000 for the death of a person eighty-one years of age, being regarded by the trial court as so flagrantly excessive as to be accounted for only on the grounds of prejudice, passion or misconception, is not cured by a remittitur and the entry of a judgment for the sum of $1,500.

**Trespass on the Case.**—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded. Opinion filed January 21, 1902.

**Statement of Facts.**—This is an action on the case brought by appellee, as plaintiff, against appellant, to recover damages resulting from the death of Gottlieb Ziroch, appellee's intestate. Plaintiff filed his declaration in three counts, alleging the exercise of due care on the part of the decedent, and negligence on the part of the railroad company in improperly managing its train and backing the same upon the wagon in which the decedent was riding, causing his death; also negligence in not ringing a bell or blowing a whistle and in not employing proper safeguards to warn decedent of the °approach of the train. The allegation as to the beneficiary contained in each count is the same, and is as follows:

"And the plaintiff avers that the said Gottlieb Ziroch left him surviving Sophia E. Schuman, his daughter and next of kin, who is still living, and that by reason of the death of the said Gottlieb Ziroch as aforesaid, the said Sophia E. Schuman has been and is deprived of her means of support."

Defendant pleaded not guilty. The case was tried March 5, 1900, and on May 12, 1900, in pursuance of an order entered that day, which overruled the motion for a new trial and entered judgment and gave leave to the plaintiff

to file an amendment to the declaration instanter, he did on that day amend his declaration by striking out of the original declaration the reference to the beneficiary above quoted, and inserting in lieu thereof the following:

"And the plaintiff avers that the said Gottlieb Ziroch left him surviving at the time of his death no widow, and only Sophia E. Schuman, who is his daughter and his only next of kin, and that the said Sophia E. Schuman is still living, and that by reason of the death of the said Gottlieb Ziroch the said Sophia E. Schuman has been and is deprived of her means of support, to wit, in the county of Cook aforesaid."

A verdict was found for plaintiff for $5,000, $3,500 of which was remitted by plaintiff, and judgment entered for $1,500. The facts as proven on the trial are as follows:

On October 13, 1898, the appellant owned and operated a railroad, which, curving southerly and westerly, crossed the highway known as Western avenue a little south of the village of Blue Island, and outside of the corporate limits of any municipality. Western avenue runs north and south, and the roadway was carried across the railroad tracks on planking sixteen or eighteen feet long, laid across and in the center of the roadway, making a drive-way across the tracks sixteen or eighteen feet in width. At about 4 o'clock in the afternoon of the day in question, appellant had blocked the entire width of Western avenue by a train of some fifty-one cars, the engine attached thereto being around the curve north and east of the railway crossing. The extreme rear end of the train, the caboose or way car, blocked the crossing and remained so from five to ten minutes. While the crossing was so blocked, a number of teams came up, both from the north and south, and were detained until the train moved up so as to leave the entire crossing clear, whereupon several of the teams and some foot passengers crossed over; then the train backed up or bunted back until the rear end of the caboose stood just in the middle of the planking, leaving eight or nine feet of the west part of the planking clear, but blocking all the remainder of the planking and road-way east of this eight or nine feet of planking. Among those who were waiting

to cross when the crossing was entirely blocked, was the decedent, Gottlieb Ziroch, and one Peter A. Downey. All of the teams which were in a direct line in the central part of the roadway and ahead of Ziroch succeeded in crossing while the crossing was entirely clear after it had been first blocked and before the caboose was pushed back so as to block half of the crossing. Downey, who had been somewhat in the rear, drove up by the side of Ziroch and at his left or to the east of him, when the caboose was backed up so as to cover half the crossing, and immediately upon its stopping there Downey drove his horse in ahead of Ziroch and drove around the rear of the caboose and got over in safety, but as he was crossing, or immediately before crossing, heard the noise of the cars as the slack was being taken up, and, putting his whip to his horse, or using other means to urge him to a rapid gait, drove over and just escaped the car as it started to come back. Mr. Downey testified that not more than two minutes elapsed between the time when the last team crossed when the crossing was entirely clear, and the time when he drove over, during which time the caboose had backed up so as to cover half the crossing. Downey drove a little covered buggy, the top of which was up at the time; Ziroch was in an open one-horse wagon, sitting on the right hand or west side of the seat and was accompanied by a man named Cunningham, who sat at his left. Immediately upon Downey's starting up, Ziroch urged his horse by slapping him with the reins, and followed close in the rear of Downey's buggy, so close that as the rear of Downey's buggy was leaving the south rail, Ziroch's horse was going on to the north rail. Cunningham, who was with Ziroch, swears that he did not hear the noise of the cars as the slack ran back, nor any whistle or bell; that he did not look to see whether the train was moving or about to move in any part of it, and does not know whether Ziroch looked or not; that Ziroch made no noise and spoke no word indicating that he saw or heard any movement of the train or of the cars. A flagman in the employ of the railroad company stood in the roadway of

Western avenue south of the track and very close up to the southwest corner of the caboose as it stood half way over the crossing. He was entirely hidden from Ziroch and Cunningham by the end of the caboose and the covered buggy driven by Downey. Whether the flagman made any effort to stop Downey and Ziroch from crossing is disputed, the flagman himself testifying that he did so, and that he called out to them to stop, which was corroborated by two girls working in a field about 200 feet distant, but is denied by a witness who was driving up from the south, and both Downey and Cunningham say they did not hear or see him give any warning. It is not contradicted, however, that the flagman was at his post. That the cars made considerable noise taking up slack is testified to by another witness, who was north from the crossing, and in a better position to hear such sounds than the witnesses at the crossing. The engineer testified that he had cut his train, and in recoupling, backed against the disconnected part, and not making his coupling, started up again, and again came back, which accounts for the two movements of the caboose over the crossing, after it had been pulled up so as to entirely clear it; that is, the first attempt at coupling probably drove the caboose half way over the crossing, and the second and successful one drove it back again. Ziroch was not struck by the caboose, but it struck the horse and the front end of the wagon. Cunningham jumped out in safety; Ziroch was thrown out and died in a few minutes. Ziroch was eighty-one years of age, but a man in good health, good eyesight and good hearing. He conducted a small farm a short distance south of this crossing, and man-aged the same with the assistance of his daughter. Downey, who was a witness for plaintiff, testified that he started up ahead of Ziroch just after the caboose had stopped, when it backed half way over the crossing, and took in the situation, and made up his mind that he could go over, and went over. When his horse was standing by the side of Ziroch, and before he started, he was two or three rods distant from the track, and on the stand testified that he

remembered the facts so well because he was afraid he had led Ziroch into temptation. On the trial it was proven, over appellant's objection, that Ziroch left no widow and no other children him surviving, except Sophia E. Schuman, but no evidence was offered negativing the possibility of other next of kin, such as children of deceased children, being left by Ziroch.

JESSE B. BARTON, attorney for appellant.

BORMAN & McGRATH, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

Omitting all consideration of the questions of negligence by the railway company or of contributory negligence by the deceased, raised by the record before us, we think the judgment of the Superior Court should be reversed for other reasons shown.

It has been held, from the time of the earliest decisions by our Supreme Court on the statute, until now, that the fact whether the deceased left a widow or next of kin, must be alleged in the declaration and proved as alleged. Chicago & Rock Island R. R. v. Morris, 26 Ill. 400; Quincy Coal Company v. Hood, 77 Ill. 68; Lake Shore & M. S. Ry. Co. v. Hessions, 150 Ill. 546; St. Luke's Hospital v. Foster, 86 Ill. App. 282.

A defect in that respect, in the declaration, was conceded by appellee, who sought to remedy it by filing an amendment after trial and while the motion for a new trial was being heard, which was, by leave of court, allowed. This amendment was properly allowed, the amendment not stating any new cause of action or doing anything but perfecting the declaration so as to enable the plaintiff to recover on the cause already, though imperfectly, stated. Order Mutual Aid v. Paine, 122 Ill. 625.

But the judgment will have to be reversed for another reason. The jury awarded a verdict of $5,000, which the plaintiff remitted down to $1,500, and took judgment for that sum. By the terms of the statute the jury were

entitled to award, for the benefit of the wife and next of kin, such damages as they should deem to be a fair and just compensation to them, with reference to the pecuniary injuries resulting to them from such death.   No other fact than the pecuniary injury can be considered in assessing the damages.   Illinois Central Railroad Co. v. Baches, 55 Ill. 379; Chicago, Peoria and St. Louis R. R. Co. v. Woolridge, 174 Ill. 330.

It is said, in Illinois Central R. R. Company v. Weldon, 52 Ill. 290, and repeated with approval in the Woolridge case, *supra*, " Some evidence should be given of the profits of the labor of the deceased (if he was a laboring man), and what he might, in all probability, earn for the future support of his wife and children.   In this consists essentially the loss to the family."

We do not think that, as argued by appellant, the decision in the Woolridge case is intended to limit the recovery of direct or lineal descendants " to what may be estimated as the probable increase of the estate, had he lived; that is, not how much benefit the beneficiaries might receive from him during his life, but how much he would have accumulated, and which they would have inherited had he died intestate."   If there be found in the opinion in that case expressions appearing to sustain appellant's understanding of it, we do not think they were so intended.

The deceased was eighty-one years old at the time of the accident.   He lived on and cultivated, with the aid of his daughter, a small farm of twenty-seven acres, which he rented.   It also appears he was able to do work on the farm, and was active and a " pretty spry old man."   Sophia E. Schuman, his daughter, was forty-one years old and lived with him, and received her support, food, clothing and shelter from him.   Her father gave her money twice, two or three dollars at a time.   She also worked on the farm, gave up all her time to keeping up the house and farm, husked corn, dug potatoes, unloaded hay, etc.   In fact, although it is not so shown, it is a fair inference, she did as much or more than the deceased about the farm and house.

It is not shown what the deceased usually earned or made out of the farm, except that he always paid his rent promptly. Presumably his earnings or savings, beyond the bare cost of living for himself and daughter, were small, and were not likely to be larger in the few remaining years of his life. Now, for the jury to award a verdict for the outside limit fixed by the statute, for the pecuniary loss suffered, under such circumstances, is palpably so excessive as to justify the inference that they were actuated by prejudice or partiality. The trial judge so undoubtedly thought, and required a remittitur of $3,500 to be entered as a condition of not granting a new trial. Had the verdict in the first instance been for $1,500, we would probably not disturb a judgment entered on it.

But the fact that the trial judge required so large a remittitur from the verdict that was given, does not cure the excessiveness of the verdict. Where the verdict is so flagrantly excessive as to be only accounted for on the grounds of prejudice, passion or misconception, a remittitur does not cure it. (Loewenthal v. Streng, 90 Ill. 74.) The excessiveness still clings to the judgment and enters into it, and every part of it. It shows that the prejudice or partiality entered as much into the finding of negligence of appellant and due care of deceased as in the sum that was awarded. A judgment, under such circumstances, for any amount, in effect substitutes the court for the jury, and defeats the statute, which requires that a jury shall fix the compensation at what is fair and just. North Chicago Street R. R. Co. v. Hoffart, 82 Ill. App. 539.

For the reasons stated the judgment is reversed and the cause remanded.