## Lewis T. Rhoads et al. v. Chicago & Alton Railway Company.

1. DEATH CAUSED BY WRONGFUL ACT—*what cannot be recovered by collateral kindred.* In an action for death caused by wrongful act collateral kindred cannot recover the amount of the accumulations which the deceased would probably have had and which would at his death constitute his estate.

2. DEATH CAUSED BY WRONGFUL ACT—*what essential in order that collateral kindred may recover more than nominal damages.* In order that collateral kindred of the deceased may recover more than nominal damages, it must appear from the evidence that such collateral kindred had received pecuniary assistance from the deceased.

Action on the case for death caused by alleged wrongful act. Error to the Circuit Court of Logan county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

BEACH, HODNETT & TRAPP, for plaintiffs in error.

BLINN & COVEY, for defendant in error; F. S. WINSTON, of counsel.

MR. JUSTICE BAUME delivered the opinion of the court.

Plaintiffs in error, Lewis T. Rhoads and John W. Barr, administrators of the estate of Andrew J. Barr, deceased, brought their action on the case against defendant in error, the Chicago & Alton Railway Company, to recover damages for wrongfully causing the

death of their intestate. A trial by jury in the Circuit Court of Logan county resulted in a verdict and judgment against defendant in error for $1, nominal damages, and costs of suit.

The only question presented for decision is the propriety of the action of the trial court in giving and refusing certain instructions relating to the measure of damages.

Plaintiffs in error requested the court to charge the jury as follows:

"1. The court instructs the jury that if you find from the preponderance of the evidence in this case that the defendant is guilty as charged in the declaration or some count thereof, then in assessing the plaintiff's damages, if you find from the evidence that the said Andrew J. Barr was an attorney at law during his lifetime and that he did and was in the habit of doing the legal work and giving his legal service to his brother and sisters, being his next of kin, from time to time, during his lifetime and that he at the time of his death had charge of legal business and work for any of his sisters or next of kin, and that by the death of the said Andrew J. Barr the said sisters and brother of the said Andrew J. Barr were deprived of the said legal work and services of the said Andrew J. Barr, then you have a right to take that fact, if it be a fact, into consideration in assessing the damages which the plaintiffs have sustained.

"2. The court instructs the jury as a matter of law that if you find the defendant railroad company guilty as charged in the declaration or some count thereof, from the evidence in this case and under the instructions of the court as to the law, the amount of damages, if any, which the plaintiffs are entitled to recover is what the law regards as the pecuniary value of the addition to such estate left, as the deceased Andrew J. Barr in reasonable probability would have made to it and left if his death had not been so wrongfully caused. And you should take into consideration all the facts and circumstances bearing upon this question proven in the evidence in this case—the

mental and physical capacity of the deceased, his habits of industry and sobriety, the amount of his usual earnings, his prospects of life, and his means, opportunities, ability and habits with reference to the making and saving of money or money's worth, so far as the same are shown by the evidence in this case.

"3. The court instructs the jury that as a matter of law that if you find the defendant guilty as charged in the declaration or some count thereof, under the evidence in this case and the instructions of the court as to the law, it will then be your duty to assess the plaintiff's damages, and in assessing such damages, if any, you have a right to take into consideration all of the testimony bearing upon the question of pecuniary damages and to allow such damages as you may find from the evidence to be a fair and just compensation with reference to the pecuniary injuries resulting from the death of the deceased, Andrew J. Barr, to his next of kin."

These instructions were refused.

At the instance of defendant in error the court instructed the jury as follows:

"6. The court instructs the jury that in a suit like the one now pending before you, the law does not take into consideration and allow damages for grief caused to deceased's relatives by his being accidentally killed; but it is only for the pecuniary or money loss sustained by his relatives that the law allows damages, and where the nearest relatives are a brother and sisters, as in this case, the law does not presume damages to his relatives, by the deceased being accidentally killed but damages must be proven. In the absence of proof of pecuniary or money loss to the deceased's relatives, if you should find for the plaintiff, in assessing damages you can only assess nominal damages, and by the term nominal damages, is meant, one dollar or one cent.

"7. You are further instructed that if you should find for the plaintiff then in assessing damages, before you can allow more than nominal damages it must appear from the evidence that the brother and sis-

ters of A. J. Barr either jointly or separately, were in his lifetime in the habit of claiming or receiving from the deceased Andrew J. Barr pecuniary assistance, or were in some way dependent upon him for financial aid.

"8. You are further instructed that in this case there has been no proof offered that either of his relatives were in the habit of claiming or receiving from the deceased pecuniary assistance, or were in any way dependent upon him for pecuniary aid. If therefore, you should by your verdict find for the plaintiff, you can only assess nominal damages as defined by the instructions."

It appears from the evidence that at the time of his death the deceased was 48 years of age; that he was an attorney at law in the active practice of his profession from which he realized an annual income of about $10,000; that he was unmarried, and left surviving him as his next of kin one brother and three sisters, all of whom are adults; that he advised his brother and sisters with reference to their business affairs, and attended to all their legal business without compensation therefor; and that at the time of his death he was attending to some legal business for his sister Rebecca E. McKean. There is no evidence in the record tending to show that the brother or sisters of the deceased, or either of them, had ever claimed or received any pecuniary assistance from him. Neither is there any evidence tending to show that the deceased had any ability to accumulate and save money or property.

The contention of plaintiffs in error is thus stated by their counsel: "We admit that in a case where there is no proof that a deceased ever supported, or contributed to the support of his next of kin, or that he was a producer or had any ability to earn or save money, or to accumulate and leave an estate, or that he rendered any service to his next of kin, there would be no proof in the record that any pecuniary damage had been sustained, and the plaintiffs would be en-

titled to nominal damages only.   But we assert that
where the proof shows an ability to earn and save
money and accumulate property, which would pass
by descent to the next of kin, or where the proof
shows valuable legal or other services, then there is
such proof of pecuniary damages as entitles plaintiffs
to recover.   If the contrary rule seems to be laid down
by the courts of Illinois, it is only *obiter dicta.*''
Otherwise stated, the contention, in part, is, that the
next of kin can recover as pecuniary damages the
amount of the accumulations which the deceased
would probably have had, and which would at his
death constitute his estate, irrespective of whether
such recovery is sought by lineal or collateral
kindred.

It is furthermore insisted on behalf of plaintiff
in error that the question here presented is one of
first impression in the courts of this state.

Counsel for plaintiffs in error have favored us with
an exhaustive brief of the authorities bearing upon
the question, and many reported cases are to be found
announcing the doctrine contended for by them.
Time and space, however, forbid a citation and re-
view of such cases.

We are unable to agree with the statement of coun-
sel that the main question here presented is one of
first impression in the courts of this state.   In the
case of Huff, Admr., v. P. & E. R. R. Co., 127 Ill.
App. 242, which was an action to recover damages for
death by wrongful act, this court had occasion to con-
sider and review many of the authorities cited by
counsel in the case at bar, and it was there held that
if deceased left surviving lineal next of kin, pecuniary
loss would be presumed, and that the amount of such
pecuniary loss, although difficult of ascertainment,
was to be fairly and justly determined by the jury,
under the evidence, according to their best deliber-
ate judgment; that where the deceased left surviv-

ing only collateral next of kin in order to recover more than nominal damages, it must appear from the evidence that such collateral next of kin had received pecuniary assistance from the deceased. This view was adhered to in obedience to what was conceived to be the oft-repeated and settled rule announced by the court of last resort in this state.

In Chicago & Alton R. R. Co. v. Shannon, Admr., 43 Ill. 338, it was said: "The statute upon this subject, * * * authorizes the suit to be brought for the exclusive use of the widow and next of kin. We do not perceive how the conclusion is to be avoided, that wherever there are next of kin the action will lie for the recovery of at least nominal damages. We know of no principle by which we are authorized to say that 'the next of kin' must be within certain degrees of consanguinity. Any rule of limitation of that character which we should endeavor to lay down, would be purely arbitrary, and mere judicial legislation. The phrase 'next of kin,' used in the statute, is a technical legal phrase, and we must suppose it to have been used by the legislature in its technical sense. It means here what it means elsewhere. But, while the action may be brought in any case where there are next of kin, the more important question remains— what is to be the measure of damages? This court held in The City of Chicago v. Major, 18 Ill. 349, and again in The Chicago and Rock Island Railroad Company v. Morris, 26 Ill. 400, that the recovery can only be for the pecuniary loss and damage and not for the bereavement. Nothing can be given as *solatium*.

"If then the next of kin are collateral kindred of the deceased and have not been receiving from him pecuniary assistance and are not in a position to require it, it is immaterial how near the degree of relationship may be, only nominal damages can be given because there has been no pecuniary injury. If, on

the other hand, the next of kin have been dependent on the deceased relative for support, in whole or in part, it is immaterial how remote the relationship may be, there has been a pecuniary loss for which compensation, under the statute, must be given.''

In the City of Chicago v. Scholten, 75 Ill. 468, the court said: ''Where the next of kin are collateral kindred of the deceased and have not received pecuniary aid from him proof of such relationship would warrant a nominal recovery of damages only; but where deceased is a minor and leaves a father entitled to his services the law presumes there has been a pecuniary loss, for which compensation, under the statute, may be given.''

In Holton v. Daly, Admr., 106 Ill. 131, Mr. Justice Scholfield, after citing Chicago & Alton R. R. Co. v. Shannon, Admr., *supra,* said: ''And so, also, upon like principle, it has been held, if the next of kin are collateral, it is a material question whether they were in the habit of claiming and receiving pecuniary assistance from the deceased. If they were not they can recover but a nominal sum; but where the relation of husband and wife or parent and child exists, the law presumes a pecuniary loss from the fact of death.''

In the North Chicago Street R. R. Co. v. Brodie, Admr., 156 Ill. 317, the language of the court in the cases heretofore cited was quoted with approval, and it was further said. ''Where a wife loses a husband upon whom she relies for support, or where a father loses a minor son who is earning wages which belong to the father, or where a child loses a father, the pecuniary loss can easily be determined, but where, as in this case, the intestate leaves no person as next of kin but a brother who is of lawful age and in no manner dependent on the intestate for support, it is difficult to perceive what pecuniary loss has been sustained.''

In C., P. & St. L. R. R. Co. v. Woolridge, 174 Ill.
330, and in C., B. & Q. R. R. Co. v. Gunderson, 174
Ill. 495, all the preceding cases were cited with ap-
proval, and the rule there announced as to the measure
of damages, was adhered to.

True, the right of collateral kindred to damages
under the statute permitting a recovery of damages
for death by wrongful act, was not directly involved
in all of the cases considered by the court, but the
statute itself was before the court for construction,
and we are not disposed to hold that the language re-
peatedly employed by the court in judicially constru-
ing the statute was merely *obiter dictum*.

The evidence bearing upon the gratuitous perform-
ance by the deceased of legal services for his brother
and sisters is too vague to sustain the contention that
such services by the deceased constituted assistance
or support to his next of kin of a pecuniary nature,
or that the deprivation of such services was a pecuni-
ary loss to them within the contemplation of the
statute. The first refused instruction was, therefore,
properly refused because of the absence of sufficient
evidence to support it.

The trial court was, as this court is, bound to fol-
low the adjudications of the Supreme Court upon the
question involved, and as we are of opinion that the
action of the trial court in refusing and giving in-
structions was in harmony with the rule announced
in the adjudged cases cited, the judgment will be
affirmed.

*Affirmed.*