### Thomas Bateman, Administrator, Appellee, v. Illinois Central Railroad Company, Appellant.

VERDICTS—*when not excessive.* *Held,* in an action for death caused by wrongful act, that a verdict of $3800 was not excessive and was not induced by improper consideration of services which had been rendered by the intestate to her next of kin.

PHILBRICK J., dissenting.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of De Witt county; the Hon. W. G. COCHRAN, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed May 26, 1911.

LEMON & LEMON, for appellant; JOHN G. DRENNAN, of counsel.

HERRICK & HERRICK, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee against appellant for $3,800.00 as damages for wrongfully

causing the death of appellee's intestate, Callie Parrish. It was conceded upon the trial that appellee was entitled to recover damages, and the only controversy related to the amount of such damages. It is insisted that the damages awarded by the jury are excessive, and that the amount of the verdict was induced by the admission of incompetent evidence and by the improper argument of counsel for appellee.

At the time of her death, appellee's intestate was a widow, 37 years of age and in good health, and resided with her parents upon a large farm. Her next of kin was her son, Joseph, aged 16 years, who resided with his mother and grandparents. Having established these facts, and the further fact that at the time of her death the deceased was doing work at home, counsel for appellee asked the witness, a sister of the deceased, the following question: "Do you know what her services were fairly and reasonably worth at and just prior to her death?" To this question counsel for appellant objected upon the ground that there should be added to the question the words following: "to any one requiring services such as she rendered." Counsel for appellee then re-formed the question to comply with the objection and counsel for appellant then objected to the words "such services as she was rendering," and stated that the question was abstract and should not be applied to any particular person for whom the deceased was working, but what her physical and mental capabilities would enable her to earn. The objection was overruled and the witness answered the question in the affirmative, and in answer to a further question testified that she was at the place where her sister was employed from time to time and that she observed what services her sister was rendering. Counsel for appellee then asked the witness the following question: "State what services such as she was rendering, were fairly and reasonably worth to any person requiring such services as she was rendering at the time of the accident, and just prior thereto?" To which question counsel for appellant interposed an objection as follows: "Defendant objects for the reason that

Bateman v. Illinois Cent. R. Co., 162 Ill. App. 125.

the deceased may have been performing duties and services that spring from filial love and affection that cannot be hired, and a person may place claims of fictitious value on it. I don't care what services she was performing at home. If she was performing such services for her father and mother that perhaps she would not perform for anybody else, that does not apply in this case. It is only what her mental and physical capabilities would enable her to render. There might be some old persons there for whom she did some work and took care of them, but would not do for anybody else. It is what she would earn and leave to her estate." The objection was sustained to the form of the question the court remarking: "If this witness knows what the services of a person with the physical and mental acquirements of the deceased were worth, she can give an opinion as to their worth, but what they were worth to her father and mother or anybody who would take a fancy to her services wouldn't come within the rule." The witness then testified that she was acquainted with the physical and mental ability of the deceased and was the twin sister of the deceased. The witness was then asked the following question: "Do you know what the value of the services were worth, in the community, a fair and reasonable value, such as Callie Parrish was rendering at and just prior to the time of her death?" The record states the objection of counsel for appellant to said question as follows: "To which question, defendant by counsel then and there objected, for the reason that it says, the kind of services she was rendering. There is where the trouble comes in. There is some peculiar kind of services I apprehend, that she was looking after. That is not the rule." The objection was overruled and the witness answered the question in the affirmative. The witness was then asked: "You may state what the services, that she was rendering and which she was mentally capable of as well as physically, were fairly and reasonably worth to any one in that community in which she was living at and just prior to the time of her death." To this question counsel for appellant objected because the witness had not stated what the

128　　　Appellate Courts of Illinois.

Bateman v. Illinois Cent. R. Co., 162 Ill. App. 125.

physical and mental capabilities of the deceased were or that she knew what the ruling wages and services of a person of that kind in the community at the time in question were, and because it calls for an opinion as to the services that may be of some peculiar value to her father and mother who have no claim for damages in the case, and because the witness had not stated the kind of character of the services the deceased performed or was capable of performing. The objection was overruled by the court but the question was not then answered by the witness. The witness then stated that she knew the kind of services the deceased was performing at and just prior to the time of her death. The witness was then asked to tell the jury what such services were, to which question an objection was interposed that the services were rendered to the father and mother of the deceased, who had no claim for damages, and which services had no market value. The objection was overruled and the witness testified that the deceased did all the work about the house of eighteen rooms; kept all the books for her father; hired the men and kept account of all the work done on the farm of 756 acres; did all the work of a nurse who had quit and to whom twenty-five dollars a week was being paid; kept her father's bank book and wrote most of his checks; hitched up her father's horse for him and drove him around when he was unable to do so; and fired the furnace. The witness was then asked what such services as the deceased was rendering at and just prior to her death were fairly and reasonably worth to any one in the community where she was residing. The question was objected to as being irrelevant and immaterial and because it was only material to know what the deceased received for her services. The question was not answered but the witness further testified that she knew what the deceased was receiving for her services and that she thought the deceased was receiving about $200. She further testified that she did not believe she could tell exactly what compensation the deceased was receiving for her services at and prior to the time of her death.

Other witnesses called on behalf of appellee were examined

by counsel for appellee substantially along similar lines and the cross-examination of such witnesses by counsel for appellant developed in detail the physical infirmities of the father and the personal care and attention which the deceased was necessarily called upon to render to her father.

It appears from the evidence that the son and next of kin of the deceased resided at the home of his grandparents with the deceased; that he attended school a portion of the time and did some work upon the farm, and that his board, lodging and clothing was provided by the father of the deceased; that the deceased at the time of her death was in good health and vigorous mentally and physically, and that she received from her father from time to time such amounts of money as she required; that the reasonable value in the community of such services as she rendered to any one requiring like services was from $800 to $1,000 per year; that upon one occasion when she performed housework for a farmer she received from a dollar to a dollar and a half a day.

It is insisted on behalf of appellant that all of the evidence relating to the character of the work performed by appellee for her father and in his household was incompetent and that the award of damages by the jury was necessarily predicated upon a consideration of the value of the services of the deceased to her father and mother, rather than to her son and next of kin. It will be observed upon a consideration of a portion of the record heretofore quoted that counsel for appellant prejudged the character of services performed by the deceased, and that the objections indicated were interposed in an effort to exclude from the consideration of the jury the value of the services of the deceased to her father and mother and to limit the value of such services within the proper sphere, and that the suggestions to that end offered by counsel for appellant were uniformly adopted by counsel for appellee in framing questions to be answered by the witness. In one instance counsel for appellant objected to a proposed line of examination relating to the value of the services of the deceased upon the ground that the charac-

ter of such services as the deceased was capable of performing had not been shown, and the inquiry was then made of the witness as to the character of such services. Counsel for appellant then objected to evidence which he had invited and which had been adduced upon his suggestion. In the course of the trial the jury were informed by the court that the worth of the services of the deceased to her father and mother were not proper to be considered as an element of damages, and at the close of the evidence the jury were specifically instructed at the instance of appellant that they had no right to allow any damages for or on account of the father or mother, or either of them being deprived of the services of the deceased, and that neither the father nor the mother was entitled to any damages.

In Dukeman v. C. C. C. & St. L. Ry. Co., 237 Ill. 104, it was held to be the established rule in this state that where the next of kin sustain a lineal relation to the deceased the law presumes some substantial damages from the relationship alone. Pecuniary loss as to lineal next of kin is held to mean what the life of the deceased was worth in a pecuniary sense to such next of kin and proof of the personal characteristics, mental and physical capacity and habits of industry and sobriety of the deceased are proper elements to be considered in determining such pecuniary loss. C. P. & St. L. R. R. Co. v. Woolridge, 174 Ill. 330.

Doubtless the value placed by some of the witnesses upon the services of the deceased as reasonably being worth from $800 to $1,000 a year was somewhat exaggerated, but eliminating the element of exaggeration induced in part by the personal services which the deceased performed for her father, it is unquestioned that her services provided for the living expenses of her son and herself and the payment to her of such money as she needed, and taking into account her expectancy of life and the expectancy of the life of her son, and the personal services she performed for her son, and the fact that she was capable of earning at least forty dollars a month, we are not prepared to say that the jury were in-

fluenced by improper considerations in assessing the damages, or that the damages assessed are excessive.

We have considered the objections urged to the language employed by counsel for appellee in his argument to the jury and find nothing therein to which objections were not sustained by the court that could have operated to the prejudice of appellant.

There is no prejudicial error in the record and the judgment of the circuit court will be affirmed. One-half of the cost of the additional abstract filed by appellee will be taxed against appellant.

*Affirmed.*

Philbrick, J., dissenting.