## Fred Lincoln, Appellee, v. Edward B. Pryor, Receiver of the Wabash Railroad Company, Appellant.

1. MASTER AND SERVANT, § 565*—*when variance between pleading and proof as to place of injury not fatal.* In an action by a car inspector for damages for injuries sustained as a result of being struck by a "kicked" car moving on one track while he was standing between such track and another track inspecting cars on the latter track, a variance between the declaration, which alleged that the car was "kicked" in upon the track on which the cars being inspected were placed and evidence showing that the car was "kicked" in on the other track, *held* not fatal.

2. APPEAL AND ERROR, § 438*—*when objection of variance may not be raised on appeal.* The question of variance between the declaration and the evidence cannot be raised on appeal when the attention of the trial court was not called thereto so as to give an opportunity to amend the pleadings.

3. MASTER AND SERVANT, § 693*—*when evidence sufficient to sustain finding that yard foreman of switching crew knew that car inspector was inspecting cars.* In an action by a car inspector for damages for injuries sustained as a result of being struck by a "kicked" car moving on a track on one side of him while inspecting a train on a track on the other side, evidence *held* sufficient to sustain a finding that the yard foreman of the switching crew knew that plaintiff was engaged at his work of inspecting the cars of a train that had arrived.

4. MASTER AND SERVANT, § 177*—*when railroad liable for negligent injuries to employee by "kicked" car under Federal Employers' Liability Act.* The knowledge of a yard switchman that a car inspector was at work inspecting a train on a certain track at night and his negligence in "kicking" an unlighted and unattended car without warning at a speed of from eight to seventeen miles per hour on an adjoining track so that the car struck the car inspector, is sufficient to render the railroad company liable under the Federal Employers' Liability Act.

5. MASTER AND SERVANT, § 717*—*when negligence in "kicking" car without warning question for jury.* In an action by a car inspector for damages for injuries sustained as a result of being struck by a "kicked" car moving on a track on one side of him while he was inspecting a train on the other side, where there was evidence that the accident occurred at night, that the car was not

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

lighted, was unattended and was sent without warning at a speed of from eight to seventeen miles per hour, *held* that the negligence of the railroad company was a question for the jury.

6. MASTER AND SERVANT, § 628*—*when evidence as to existence of custom of having brakeman or light on "kicked" car admissible.* In an action by a car inspector for damages for personal injuries sustained as the result of being struck at night by a "kicked" car moving on a track on one side of him while inspecting a train on a track on the other side, *held* that evidence as to the existence of a custom of having a brakeman or a light on a "kicked" car was admissible on the questions of due care and assumption of risk.

7. MASTER AND SERVANT, § 337*—*what risks servant does not assume.* A servant does not assume the risks of the negligent acts of the master that are unusual or extraordinary and not known to the servant.

8. MASTER AND SERVANT, § 698*—*when assumption of risk of being struck by "kicked" car question for jury.* In an action by a car inspector for damages for personal injuries sustained as the result of being struck at night by an unattended unlighted car which was "kicked" without warning on an adjoining track at a speed of from eight to seventeen miles per hour, where there was evidence that it was not customary to kick a car in on the track without a brakeman thereon to control it and without a light, *held* that it was a question for the jury whether plaintiff assumed the risk.

9. MASTER AND SERVANT, § 363*—*what risks assumed by servant.* An employee assumes all risks which are obvious and apparent and which are known to him, although such conditions are produced as the result of the master's negligence if he continues in his employment without a promise to remedy such defects.

10. NEGLIGENCE, § 196*—*when question of proximate cause for jury.* The question of proximate cause is usually one of fact for the jury, unless there arises out of the evidence such a state of facts as all reasonable minds would agree that the facts so proven do not constitute the proximate cause.

11. MASTER AND SERVANT, § 760*—*when negligence of railroad in "kicking" car on track adjoining car inspector as proximate cause of injury question for jury.* In an action by a car inspector for damages for personal injuries sustained as the result of being struck at night by an unattended, unlighted car which was "kicked" without warning on an adjoining track at a speed of from eight to seventeen miles per hour while he was inspecting a train, *held* that it was a question for the jury whether the negligence of the defendant in "kicking" the car on the adjoining track under the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

circumstances was the proximate cause of plaintiff's injury was a question for the jury.

12.  INSTRUCTIONS, § 159*—*when deficient instruction cured by other instructions.* An instruction is not objectionable as not limiting negligence to that charged in the declaration where other instructions limit the negligence to that charged in the declaration.

13.  DAMAGES, § 206*—*when instruction authorizing damages for future suffering not erroneous as not being based on evidence.* An instruction in an action for damages for personal injuries authorizing damages for future suffering and loss of health, *held* not objectionable as directing the jury as to the amount of damages where there was evidence that plaintiff still suffered from pain at the time of the trial and would probably have to undergo an operation for the amputation of his leg before he could regain his health.

14.  MASTER AND SERVANT, § 98*—*when instruction on damages in action under Federal Employers' Liability Act erroneous.* An instruction in an action under the Federal Employers' Liability Act which fails to inform the jury that under such act the plaintiff's damages, if any, must be diminished to the extent that the plaintiff contributed to the injury by his negligence is erroneous.

15.  MASTER AND SERVANT, § 98*—*when damages suffered by servant must be diminished by his contributory negligence.* Under the Federal Employers' Liability Act, the damages which an injured employee is entitled to recover must be diminished to the extent that the plaintiff contributed to the injury by his negligence.

16.  MASTER AND SERVANT, § 833*—*when erroneous instruction on question of damages cured by erroneous instruction for adverse party.* An erroneous instruction for plaintiff on damages, in an action for damages for personal injuries under the Federal Employers' Liability Act, which failed to inform the jury that under such act the plaintiff's damages, if any, must be diminished to the extent that the plaintiff contributed to the injury by his negligence, *held* to be cured by an erroneous instruction for defendant that in each count of the declaration plaintiff had alleged that at the time he was injured and immediately prior thereto he was in the exercise of ordinary care and caution for his own safety, that this was a material allegation and that, unless plaintiff proved it by a preponderance of the evidence, the defendant should be found not guilty, no matter what their opinion might be concerning any other fact or issue in the case.

17.  INSTRUCTIONS, § 159*—*when taken as series.* Instructions must be taken as a series.

18.  APPEAL AND ERROR, § 1316*—*when jury presumed to have followed instructions.* It will be presumed that the jury followed the instructions of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Lincoln v. Pryor, 199 Ill. App. 228.

19. APPEAL AND ERROR, § 1406*—*when verdict not disturbed on ground of excessive damages.* A verdict will not be disturbed on the ground of excessive damages where the jury were not influenced by passion or prejudice.

20. DAMAGES, § 122*—*when verdict for personal injuries not excessive.* A verdict for $8,000 in favor of a railroad car inspector for the loss of his left leg below the knee, the end of one finger and other injuries, *held* not excessive.

Appeal from the Circuit Court of St. Clair county; the Hon. M. R. SULLIVAN, Judge, presiding. Heard in this court·at the October term, 1915. Affirmed. Opinion filed April 17, 1916. Rehearing denied May 25, 1916. *Certiorari* denied by Supreme Court (making opinion final).

KRAMER, KRAMER & CAMPBELL, for appellant; J. L. MINNIS and N. S. BROWN, of counsel.

HENRY R. RATHBONE, for appellee; LLOYD V. WAL-COTT, of counsel.

MR. JUSTICE McBRIDE delivered the opinion of the court.

The appellee recovered a judgment in the court below for $8,000, which it is sought to reverse by this appeal. It appears from the record that at the time of the injury of appellee, the appellant was engaged in interstate commerce, and the injury happened between 9:45 and 10:00 o'clock on the night of July 3, 1913, in the Wabash yards at Forty-seventh street in Chicago. Appellant's switch tracks at said yards were elevated about sixteen feet above the level of the ground and there were twenty-one switch tracks running north and south. The accident happened at about Forty-fifth Place in Chicago, and the nearest light to the place of accident was from five hundred to seven hundred feet. The tracks which have any special relation to the matters in question were tracks 14, 15 and 16. Track 14 was on the east side of 15 and track 16 on the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

west side thereof. The distance between the tracks was seven feet and six inches, and cars passing along such tracks overlapped the rail for a distance of about thirty inches on each side so that the space between the two tracks when cars were thereon was about thirty inches.

Track 15 was used, and had been for a year or more, upon which trains were run from Twelfth street containing what the witnesses called "Twelfth street drag," to be inspected by inspectors who were stationed, one on the east and the other on the west side of the train, and as the train ran slowly along the inspection was made. On the evening in question appellee was inspector on the east side of said track and Matt File was inspector on the west side, and these parties had been performing this inspection work for a year or more. This train of cars arrived for inspection about fifteen minutes earlier than usual on this occasion. After the cars were inspected they were distributed by another crew into proper trains for their destination upon other switch tracks. While the appellee was engaged at his work and in a position between tracks 15 and 16, a running switch was made by this distributing crew and a car kicked in on track 16 without having any brakemen or light thereon and was thrown in at a rate of speed variously estimated at from eight to seventeen miles per hour. It appears that appellee was facing to the north at the time this car reached the place where he was engaged, and, as the car came from the opposite direction in which he was faced, did not observe it, and it struck him on the shoulder, knocked him down, the wheels passed over his leg and by reason thereof his left leg was cut off about nine and one-half inches below the knee, and his shoulder injured, the end of his finger cut off, and was otherwise injured and bruised. He was taken to the hospital and there remained for a great length of time. He now uses a wooden limb, but claims that he

has pain all the time, and a physician introduced by him testifies that in all probabilities it will be necessary for a further amputation of the limb. It further appears from the evidence that at the time of the trial appellee was a minor and attained his majority between the completion of the trial and the rendition of the verdict.

The suit was originally commenced against appellant and the Chicago Western Indiana Railroad Company, and also Walter K. Bixby, who was joined with appellant as associate receiver. At the close of plaintiff's evidence Bixby was dismissed out of the case, and at the close of all the evidence the Chicago & Western Indiana Railroad Company was also dismissed out of the case. There were several counts in the declaration, but at the close of plaintiff's evidence the court sustained a motion to exclude the evidence and direct a verdict as to all of the counts in the declaration except the first and fourth counts.

The first count of the declaration set forth that "while the plaintiff was in the ordinary course of his duties and in the exercise of all due care and caution for his own safety, engaged in walking alongside of a certain string of cars which were then and there moving slowly along said track and was close to said cars and the rails of said track so that if any car were shunted, kicked or caused to run along said track and toward the plaintiff, said car would strike against the plaintiff; and this the said defendants then and there well knew, and had due and timely notice of; * * * that the said defendants then and there so negligently and wrongfully shunted, kicked and caused a certain car to run on and along said track and toward the plaintiff, and that said car struck on and against the plaintiff with great force and violence, and thereby plaintiff was thrown down upon the ground and injured," etc.

The fourth count is the same as the first except

that it alleges as to said car so shunted and kicked, that the defendant "negligently and wrongfully failed to station, have and keep on said car any of its servants to control said car or stop the same if need be," etc.

The rights of the parties in this case are to be determined by an application of the facts to the law as laid down by an Act of Congress commonly known as the Federal Employers' Liability Act, which by its terms permits persons injured while engaged in interstate commerce to institute suit and recover for such injuries, and provides that contributory negligence shall not bar a recovery but damages shall be diminished in proportion to the amount of negligence attributed to such employee, provided that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where a violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee. It is also provided by said statute that such employee shall not be held to have assumed the risk of his employment in any case where a violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

It is not contended that the injury to appellee was caused by a violation of any statute enacted for the safety of employees, and therefore any damages sustained by appellee would be diminished in proportion to his contributory negligence, if any, and the doctrine of the assumption of risks could be invoked by appellant if the facts and circumstances warranted it. It is insisted by counsel for appellant that the plaintiff failed to prove the particular negligence charged in the declaration, and for this reason cannot recover. It is claimed that the declaration in effect alleges that the car was kicked in upon track number 15 and the

evidence shows that it was kicked in on track 16. It is true that the declaration in referring to the track upon which the car was kicked refers to it as "said track," when it would appear by a reference to the former allegations that "said track" was 15. This, however, would constitute only a variance between the allegation of the declaration and the proof, and would not be of such a character as to defeat the action. If appellant had desired to take advantage of this variance he should have at the proper time pointed out the variance and given the court an opportunity to pass upon this question, and if there was a variance, in fact, to give an opportunity to amend the pleadings so as to obviate the question, and as appellant did not do this, he cannot raise the question for the first time in this court, and it is not properly before this court for consideration. *Alton Railway, Gas & Electric Co. v. Webb,* 219 Ill. 563.

In this connection appellant's counsel have insisted that the defendant was not guilty of the negligence charged in the declaration and therefore appellee could not recover. The negligence charged is that the defendant negligently and wrongfully shunted, kicked and caused a certain car to run on and along said track and towards the plaintiff, and that said car struck on and against the plaintiff, etc., and to this, in the fourth count, is added that the defendant "negligently and wrongfully failed to station, have and keep on said car any of its servants to control said car or stop the same," etc.

There is no dispute in the evidence in this case that the defendant, by its servants, did shunt or kick a car onto track 16 without having thereon any light or brakeman, or any person to control the same, and that said car was running at a rate of speed variously estimated at from eight to seventeen miles per hour, and struck the plaintiff and injured him. The brakeman, whose duty it was to ride this car, says that it

was running so fast that he was unable to get upon it without endangering his own life. The place where appellee was at work was not well lighted and was at a distance of from five hundred to seven hundred feet from a yard light. At the time the car approached appellee he was at work with his back towards the car, his attention directed to his work, and did not observe the car. The car was kicked onto this track by the switching crew, who were engaged in the yards in distributing cars upon different tracks for their destination. This was the regular work of appellee, and while it is true, that as the "Twelfth street drag" train, as denominated by the witnesses, came in a few minutes earlier than usual on this occasion, a portion of the switching crew knew that appellee was engaged at his work in the inspection of this train. The brakeman who threw the switch and whose duty it was to ride the car down said that he saw appellee with his inspector's lamp at his place of work, and that there was nothing between appellee and Ray, the foreman of the switching gang, to prevent Ray seeing him. It is true that there is no direct testimony showing that Ray saw appellee at his place of work at this time, but Ray was there in the yard; was in a position that he could have seen the light of appellee; knew that it was about the time for appellee to be engaged in this particular work; the "Twelfth street drag" train had come in; and while there is no evidence showing specifically that he knew this train had come in, yet, under all the circumstances, we think the jury would be warranted in finding that Ray knew that the drag train was in and that appellee was engaged at his usual work, even if it were necessary that he should have had particular knowledge of the fact that appellee was there at his work. It seems to us that under this statute the knowledge of the brakeman at the time the car was kicked in that appellee was there at his place of work, and his negligence in permitting the car,

while moving so rapidly, to go unattended, would be sufficient, as the statute under consideration provides that a common carrier shall be liable "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier."

In speaking of the practice of kicking cars or making a flying switch, our Supreme Court has said: "This manner of switching has been condemned as dangerous by this court." *Illinois Cent. R. Co. v. Baches,* 55 Ill. 379; *Chicago Junction R. Co. v. Mc-Grath,* 203 Ill. 511.

"The practice of kicking or dropping cars and running switch engines and cars in railroad yards without giving adequate warning of their approach to employees engaged in the performance of their duties clearly constitutes negligence." *Adams v. Cleveland, C., C. & St. L. Ry. Co.,* 149 Ill. App. 574; *Pittsburg, C., C. & St. L. Ry. Co. v. Bovard,* 223 Ill. 176.

The question of negligence was one of fact under the circumstances here developed to be determined by the jury, and we cannot say that the jury were wrong in reaching a conclusion that the appellant was negligent in this respect.

The declaration in this case contains no allegation with reference to the existence of a custom as to having a brakeman or light upon a car when kicked in on track 16, and it is contended that the court erred in admitting testimony of the existence of such a custom under this declaration. It was necessary for the jury to determine whether or not the plaintiff was in the exercise of due care and whether or not he had assumed the risk in this case, and we think the evidence here offered was permissible for both of these propositions, if for no other. If there was a custom not to kick a car upon track 16 while plaintiff was engaged in the inspection of the train on track 15, without having on such car a brakeman and lantern, and the car was

kicked in without such, then this was a fact that might be considered by the jury in passing upon these questions. The Supreme Court has said: "It is true there is no averment in the declaration charging that the firing of the shot was negligent because fired in violation of the established custom of the mine, but there is an averment in this declaration which the evidence had a tendency to prove. The appellee averred, and it was incumbent upon him to prove, that he was in the exercise of due care for his own safety at the time of the injury, and as bearing upon this question it was proper to prove that in view of the usual custom of the mine appellee had no reason to expect that a shot would be fired in the entry at the particular time in question." *Donk Bros. Coal & Coke Co. v. Thil,* 228 Ill. 233. We are of the opinion that the evidence was admissible for the purpose of showing due care and caution, and also for the purpose of enabling the jury to determine whether or not, under all the circumstances, the appellee assumed the risk.

It is next insisted that appellee cannot recover in this case because of the doctrine of assumption of risks. It is contended by counsel for appellant that the rule as to assumed risks requires a servant to not only assume the risks incident to the business, but the negligent acts of a master as well where they are known to the servant; upon the other hand, it is contended by counsel for appellee that under the decisions of the Federal Courts the servant does not assume the risk of the negligent acts of the master. Without differentiating as to the various cases referred to, we feel that even under the rule as laid down by the Supreme Court of Illinois and invoked by the appellant, that under the evidence there was testimony tending to show such facts as would exempt appellee from having assumed the risk, and that it became a question of fact to be determined by the jury. The doctrine of assumed risk as announced by the

Supreme Court is "that an employee assumes all hazards which are obvious and apparent and which are known to him, although such conditions are produced as the result of the master's negligence, if he continues in his employment without a promise to remedy such defects." *Kath v. East St. Louis & Suburban Ry. Co.*, 232 Ill. 126. And again it is said "the risks assumed by a servant are such, only, as cannot be obviated by the employment by the master of reasonable measures of precaution. Risks that are unreasonable or extraordinary or that arise from the master's negligence are not assumed." *Chicago & G. T. Ry. Co. v. Spurney*, 197 Ill. 471. We feel that we can safely say that a servant does not assume the risks of the negligent acts of the master that are unusual or extraordinary and not known to the servant. There was evidence in this case tending to show that it was not usual or customary to kick a car in on track 16 without a brakeman thereon to control it and without a light, when the inspector was engaged in the work of inspecting the drag train. Several of the witnesses introduced on behalf of plaintiff testified to substantially this state of facts, and while upon cross-examination some inconsistent statements were made by the witnesses, they were not of a character that would warrant us in saying that they were not endeavoring to tell the truth about it. A witness introduced by the defendant also states: "They did not kick cars down there when the inspectors were doing work on either side." It is true that the testimony of some of the witnesses offered on behalf of the appellant tended to show that there was no custom with reference to this matter, yet, when the testimony is all considered, there is evidence tending to show that when the inspectors were at work upon this train it was not usual or customary to kick a car in on track 16 without a brakeman thereon to control it, and the evidence in this case shows an effort upon the part of the brake-

man, whose duty it was, to get aboard this car at the time it was kicked in, and for this purpose attempted it, but owing to the rapid motion of the car was unable to get upon it. We believe that under the circumstances as disclosed by this record, that it was a question of fact for the jury to determine whether or not the appellee assumed the risk, and we cannot say that the conclusion arrived at by them is manifestly against the weight of the evidence. The jury were plainly told by appellant's eleventh instruction that if "prior to the time of plaintiff's injury, it was not customary in kicking a car on track 16 to have a man ride on the car kicked and carry a lantern or light, then and in that case the defendant would not be liable for failure to have a man ride the car so carrying a lantern or light." We do not feel that we would be justified in disturbing the verdict on this account.

It is next insisted by counsel that the negligence charged is "for kicking it without a man riding the car, and in kicking it at all without knowledge that plaintiff was in a place of danger," and then follows with an argument that the kicking of the car in without a switchman thereon could not be the proximate cause. The question of proximate cause is one of fact usually to be determined by the jury, unless there arises out of the evidence such a state of facts as all reasonable minds would agree, that the facts so proven did not constitute the proximate cause. We do not regard the negligence charged in this declaration to be limited as above contended for by counsel for appellant.

The first count charges negligence in kicking in the car in general terms. It is true it also alleges that they had notice that the car would strike the plaintiff, and, as we view it, if the negligence in kicking in the car was proven and no facts shown to justify or excuse the negligent act and the plaintiff was shown to have been in the exercise of due care, then proof of such negligent acts, even though all the acts of negli-

gence alleged were not proven, would create a liability, and as we have before said, the jury were warranted in finding that the kicking of the car in under the circumstances was of itself a negligent act and would tend to create a liability, besides there was proof tending to show notice of the position in which appellee was at the time, and the jury were warranted in finding not only that the defendant acted negligently, but that it had notice of the position in which appellee was placed at the time. At all events we think the question of the proximate cause was a question of fact to be determined by the jury.

Objection is made to instruction No. 4, which, after defining the relation between the Wabash Railroad and the Chicago & Western Indiana Railroad Company, concluded by saying: "If you find the defendant, Edward B. Pryor, receiver as aforesaid, liable to the plaintiff in this case, you are at liberty to find the defendant, Chicago & Western Indiana Railroad Company, also responsible to the plaintiff for the negligence of said receiver or receivers, if you believe any such negligence has been proven in this case." The gist of this instruction was not as to the liability of the Wabash Railroad Company, but was limited to the circumstances under which the Chicago & Western Indiana Railroad Company would be liable, and the objection urged is that it did not limit the negligence to that charged in the declaration. It does say that said railroad company would be responsible for the negligence of the receivers but does not pretend to determine under what circumstances the receiver would be liable. There were other instructions defining under what circumstances such liability would exist and limiting it to the averments of the declaration.

It is also said that instruction No. 5 was erroneous in this that it was an instruction directing the jury as to the amount of damages that plaintiff was entitled to receive and what matters were to be taken into con-

sideration. The first objection is that there is no evidence in this record upon which to base any damages for future suffering and loss of health. It does appear from the evidence that appellee still suffers pain and also from the testimony of the physician that he will in all probability have to have a further amputation of the limb before he can regain his health, and we think the instruction fairly limits his loss of time and ability to work after he arrived at his majority. A further criticism is made upon this instruction which we think is well taken, and that is, that the instruction fails to inform the jury that under the Federal Employers' Liability Act, the plaintiff's damages, if any, would have to be diminished to the extent that the plaintiff contributed to the injury by his negligence. This is clearly the law and should have been embodied in the instruction, and were it not for instruction No. 7, given at the request of appellant, would work a reversal of this case, but instruction No. 7 tells the jury that, "in each count of the declaration the plaintiff has alleged that at the time he was injured and immediately prior thereto he was in the exercise of ordinary care and caution for his own safety. This is a material allegation of the declaration and each count thereof, and if the plaintiff has failed to prove it by a preponderance of the evidence, then you should find the defendants not guilty no matter what your opinion might be concerning any other fact or issue in the case." The instructions must be taken as a series and in the reading of this in connection with the others if the jury found that the plaintiff was not in the exercise of due care and caution for his own safety, then he could not recover, and if the jury had found such to be the fact the verdict would have been for the defendant. If we assume, as we are bound to do, that the jury followed the instructions as given by the court, we must arrive at the conclusion that if found the plaintiff was not guilty of contributory negligence,

and, if so, there would be no reason for a diminishing of the damages. While we believe that this instruction as given on behalf of appellant was erroneous, yet it was such as to cure the error of appellee's instruction, and we are not inclined to reverse the case upon the account of this error.

It is also claimed by counsel that the verdict is excessive. There is nothing in this record to show that the jury were influenced by passion or prejudice, or any other cause than that of rendering fair and just compensation to the plaintiff for the injury sustained, and under such circumstances the Supreme Court of this State has repeatedly held that a reviewing court would not have any right to disturb the verdict on account of excessive damages. The injury here sustained is a serious one, renders the appellee a cripple for life, liable to be retarded in the prosecution of any vocation he may choose to pursue, probably resulting in the further loss of a portion of his limb, and impeding his progress in life in many ways, and we cannot say that the jury were unduly influenced or that the verdict is excessive. From a careful consideration of this record we cannot say that the verdict is manifestly against the weight of the evidence, or that any errors that may have been committed require a reversal of the case, and the judgment of the lower court is affirmed.

*Affirmed.*