## ST. LOUIS-SAN FRANCISCO RY. CO. v. STITT.

No. 13404—Opinion Filed Sept. 18, 1923.

Rehearing Denied Dec. 18, 1923.

Third Application for Rehearing Denied Feb. 24, 1925.

(Syllabus.)

**1. Master and Servant -- Duty to Keep Appliances Safe.**

Generally the master's duty to the servant requires of the former reasonable care and skill in furnishing safe machinery and appliances and keeping such machinery and appliances in safe condition, including the duty of making inspection and tests at proper intervals, and that the master's responsibility for the safe condition of his instrumentalities attaches at the first moment when they are put into use and continues as long as they remain in use.

**2. Same—Inspection of Machinery.**

Such being the character of the master's responsibility, the existence of the duty of inspection is a necessary consequence of the fact that the master's obligations cannot be adequately discharged unless, during the entire period of which that responsibility is predicated, he takes notice of whatever a reasonably prudent person would have ascertained under the particular circumstances which happen to be involved.

## 3. Same—Complicated Machinery.

When the appliance or machinery furnished an employe is at all complicated in character or construction, the employer is charged with the duty of making such reasonable inspection as is necessary to detect defects, arising necessarily from the ordinary use of such instruments.

## 4. Same—Instruction to Jury.

The court instructed the jury, in substance, that it is the duty of the employer to use ordinary care in furnishing to the employe safe and suitable appliances and tools with which to work, and also to see that the same are kept in proper repair and to use ordinary care in making proper inspection of such tools so furnished which are at all complicated in character or construction.

## 5. Same — Sufficiency of Instruction on Simple Tool Doctrine.

This instruction substantially follows the rule of law announced in paragraph 3 of the syllabus and is all that the defendant was entitled to on the simple tool doctrine.

## 6. Same — Safe Appliances — Discretion of Master.

While a master must have some discretion concerning the kind of instrumentalities which he will use, this does not relieve him of the duty of exercising reasonable care in furnishing his servant safe appliances.

## 7. Same — Presumption of Skillful Manufacture.

Generally after an instrumentality has been put into use, the presumption that proper skill and care were exercised in its manufacture begins to lose its evidential importance with greater or less rapidity, according to circumstances, and, as a matter of fact, that presumption is usually a negligible quantity.

## 8. Same—Duty of Systematic Inspections.

It follows, therefore, that, whether the instrumentality in question was obtained from another party, or was manufactured or constructed by the master himself, the servant's right of action must be determined simply and solely by the principle that he was bound to subject the instrumentality to a systematic examination at such regular intervals as its nature and quality indicated to be proper, and at such other times as are suggested by specific circumstances calculated to put a prudent man on inquiry as to its condition.

## 9. Same—Negligence—Instructions.

In our judgment the question of negligence of the master in furnishing the tools and the question of negligence in its failure to properly and reasonably inspect and keep them in order after having furnished them, and likewise the question of whether a patent or latent defect existed in the tools the morning of the injury, were all properly submitted to the jury under instructions which state the applicable principles of law with reasonable accuracy.

## 10. Appeal and Error—Questions of Fact—Verdict.

In an action at law, the verdict of the jury on questions of fact is conclusive where there is any evidence reasonably tending to support it.

## 11. Same—Action for Injuries to Servant—Instructions — Harmless Error—Excessive Recovery.

Record examined, and held: (1) That in the absence of a request for special instructions the trial court did not commit reversible error in refusing to give the jury at the request of the defendant the abstract instruction that the plaintiff was engaged in interstate commerce at the time of his injury and that the case was controlled exclusively by the federal Employers' Liability Act. (2) That the misderections of the jury complained of did not result in a miscarriage of justice. (3) That the amount of recovery allowed is excessive in the sum of $5,000.

## 12. Same — Disposition of Cause — Remittitur.

For the reasons stated the cause is remanded to the trial court, with directions to require a remittitur as herein indicated within a reasonable time, and that upon failure to file same a new trial shall be granted.

Error from District Court, Pawnee County; Redmond S. Cole, Judge.

Action by Harry F. Stitt against the St. Louis - San Francisco Railway Company. Judgment for plaintiff, and defendant brings error. Cause remanded, with directions.

W. F. Evans, R. A. Kleinschmidt, and Ben Franklin, for plaintiff in error.

L. W. Mason (W. E. Hudson, T. C. Hurst, and Robert J. Boone, of counsel), for defendant in error.

KANE, J. This was an action for damages for personal injuries commenced by defendant in error, plaintiff below, against the plaintiff in error, defendant below.

It appears that the plaintiff was employed by the defendant as a boiler maker and that at the time of his injury he was engaged in prossering the flues of one of the defendant's locomotives at its regular repair and machine shop located in West Tulsa. The engine under repair was used

in hauling a passenger train running between Enid and Tulsa, two Oklahoma cities, a round trip being made daily over a part of the line entirely within the borders of the state. The repairs were being made while the engine was at rest at Tulsa waiting to start on the return trip to Enid.

The petition of the plaintiff alleges, in substance, that while he was thus engaged, together with a helper, and while inside of the fire box of said engine and while working on the flues thereof, he was using a prossering machine which was defective and unsafe and not fitted for such use in that it was improperly tempered, old, battered and worn, which defects and unsafe condition were unknown to the plaintiff, but which defects and condition were known to the defendant or could have been known to the defendant by the exercise of due and proper diligence; that while engaged on this job and while his helper was using an air hammer to drive the prosser pin of said prossering machine into the flues of such boiler, a piece or particle of steel or piece of metal was chipped, broken, or flew off from the prosser pin, striking him in the left eye with the result that he finally lost the sight thereof, from which he suffered great and excruciating physical and mental anguish and the great and permanent impairment of his earning capacity.

Plaintiff further alleges that the defendant was guilty of negligence in failing to furnish good and proper lights and good, safe, and proper tools with which to do the work required, and that it failed to furnish any light other than a kerosene torch for such work, whereas ordinary care required it to furnish an electric light.

The defense was a general denial, contributory negligence, assumption of risk, and that the plaintiff was engaged in interstate commerce and that his cause of action, if any he had, was controlled by the federal Employers' Liability Act and not by the state law.

Upon trial to the jury of the issues of fact thus joined there was a verdict in favor of the plaintiff in the sum of $30,000, $1,000 of which was specifically allowed by the jury for damages arising from the failure of the defendant to furnish plaintiff with proper medical attention. Later, under circumstances which will be hereinafter more fully disclosed, the plaintiff filed two remittiturs for the sums of $1,000 and $4,000, respectively, whereupon judgment was entered in favor of the plaintiff for

$25,000, to reverse which this proceeding in error was commenced.

Slightly changed from the order stated by counsel for plaintiff in error, the grounds for reversal are summarized in their brief substantially as follows:

(1) The verdict of the jury is not sustained by sufficient evidence.

Counsel divide this assignment of error into two subdivisions which they state in heavy type as follows:

A. Is the evidence sufficient to show 'efendant liable by reason of the conditi of the prosser pin at the time of plaintiff's injury?

B. Was the defendant negligent in failing to provide plaintiff with electric lights with which to work?

(2) The court erred in not holding as a matter of law that the defendant was engaged in interstate commerce at the time of its injury, and that said cause was controlled exclusively by the federal Employers' Liability Act.

(3) The court erred in refusing to give to the jury instructions requested by the defendant.

(4) The court erred in his instructions which he gave to the jury.

(5) Excessive damages having been given under the influence of passion and prejudice.

To start with let us lay down as settled law certain preliminary general principles governing the law of master and servant concerning which the parties agree or over which there is little room for reasonable controversy.

There is no dispute between counsel that generally the master's duty to the servant requires of the former reasonable care and skill in furnishing safe machinery and appliances and keeping such machinery and appliances in safe condition, including the duty of making inspection and tests at proper intervals, and that the master's responsibility for the safe condition of his instrumentalities attaches at the first moment when they are put into use and continues as long as they remain in use. Such being the character of the master's responsibility, the existence of the duty of inspection is a necessary consequence of the fact that the master's obligations cannot be adequately discharged unless, during the entire period of which that responsibility is predicated, he takes notice of

whatever a reasonably prudent person would have ascertained under the particular circumstances which happen to be involved. Comben v. Belleville Stone Co., 59 N. J. L. 226, 36 Atl. 473; 2 Labatt's Master & Servant (2nd Ed.) sec. 1056, and cases cited.

Now, as we understand it, the first subdivision of the first assignment of error is based upon the theory that the prossering machine, or mandrel, as it was designated by one of the expert witnesses, which caused the injury is a simple tool, and therefore the case at bar does not fall within the purview of the general rules just stated.

While there is much diversity of opinion as to what is to be considered a simple tool or implement, we perceive little or no occasion for disagreement as to the nature of the machine in the case at bar. It may be safely said that all reasonable men will readily agree that a common hammer, a hand saw, a gimlet, and tools of this sort, with which every one is more or less familiar, fall easily under the simple tool doctrine. But can the same be said of a prossering machine or mandrel, a machine made for a special purpose to be operated by skilled mechanics and whose name carries no intelligence of its construction or use to the mind of the ordinary layman? Clearly not.

In these circumstances we perceive no reason whatever for departing from the general rule in considering the errors complained of.

In 3 Elliott on Railroads, the rule is stated thus:

"When the appliance or machinery furnished employes is at all complicated in character or construction, the employer is charged with the duty of making such reasonable inspection as is necessary to detect defects arising from the ordinary use of such instruments."

The court instructed the jury, in substance, that it is the duty of the employer to use ordinary care in furnishing to the employe safe and suitable appliances and tools with which to work, and also to see that the same are kept in proper repair and to use ordinary care in making proper inspection of such tools so furnished which are at all complicated in character or construction. This instruction substantially follows the rule announced above and is all that the defendant was entitled to on the simple tool doctrine.

We think the question propounded by counsel in the second subdivision of the first assignment of error now under consideration is also a question of fact which was properly submitted to the jury.

While we agree with counsel for plaintiff in error that a master must have some discretion concerning the kind of instrumentalities which he will use, this does not relieve him of the duty of exercising reasonable care in furnishing his servant safe appliances.

We are unable to agree with counsel that there is nothing in the record to show that the use of the kerosene torch rendered the work more dangerous or hazardous. There was evidence tending to show that the plaintiff had asked for an electric light and Mr. Alexander, the company's foreman, had promised to furnish the same and instructed the plaintiff in the meantime to do his work with the tools and instrumentalities he had at hand. In these circumstances, we think, as already stated, the question "Was the defendant negligent in failing to furnish the plaintiff electric lights with which to work?" was a question of fact for the jury.

Some contention is also made under this assignment of error that since the evidence shows that the defendant purchased its prossering machine or mandrel of a reliable and reputable manufacturing company, then it must be held as a matter of law that it performed its duty of furnishing the plaintiff with suitable tools, and also that if the injury was caused by a defective appliance, the defect was latent, of which fact the master was ignorant.

Generally, after an instrumentality has been put into use, the presumption that proper skill and care were exercised in its manufacture begins to lose its evidential importance with greater or less rapidity, according to circumstances, and, as a matter of fact, that presumption is usually a negligible quantity. It follows, therefore, that, whether the instrumentality in question was obtained from another party, or was manufactured or constructed by the master himself, the servant's right of action must be determined simply and solely by the principle that he was bound to subject that instrumentality to a systematic examination at such regular intervals as its nature and quality indicated to be proper, and at such other times as were suggested by specific circumstances calculated to put a prudent man on inquiry as to its condition. 2 LaBatt's Master & Servant (2nd Ed.), section 1056.

In our judgment the question of the negligence of the master in furnishing the tools

and the question of negligence in its failure to properly and reasonably inspect and keep them in order after having furnished them, and likewise the question of whether a patent or latent defect existed in the tools the morning of the injury, were all properly submitted to the jury under instructions which stated the applicable principles of law with reasonable accuracy.

It is well settled that in an action at law the verdict of the jury on questions of fact is conclusive where there is any evidence reasonably tending to support it.

The third assignment of error does not state with precise accuracy the action of the trial court complained of. It states that the court erred in not holding as a matter of law that the plaintiff was engaged in interstate commerce at the time of his injury and that the case was controlled exclusively by the federal Employers' Liability Act. What the court did was to refuse to give an instruction stating merely an abstract proposition of law to that effect at the request of the defendant.

Section 6005, Rev. Laws 1910, provides in part substantially as follows: No judgment can be set aside and a new trial granted on the ground of misdirection of the jury unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

The instruction asked for and refused, as we have seen, merely states an abstract proposition of law which standing alone could have been of little or no aid to the jury even if it had been given. We have examined the instructions given by the court as a whole with considerable care, and we are unable to clearly gather from them whether the court was of the opinion that this particular case was controlled exclusively by the federal Employers' Liability Act or by the state law. In either event, the trial court had jurisdiction of the parties and the subject-matter, and the general law governing personal injury cases is in many respects precisely the same in effect. The principal difference between the two laws is in the rules governing contributory negligence and assumption of risk. The court gave correct general instructions on these two questions without particularly pointing out the distinguishing features of the two laws.

On the other hand, counsel for plaintiff in error did not ask the trial court to instruct the jury more particularly on these phases of the law. The statute (section 5002, Rev. Laws 1910) requires the court to give general instructions to the jury, and further provides, in substance, that if either party desires special instructions to be given, such instructions shall be reduced to writing, etc. It seems to us that under this section of the statute if counsel for the plaintiff in error were of the opinion that any special phase of the federal Liability Act was more advantageous to their client than the correct general statements of the law contained in the general instructions of the court, they should have asked for special instructions on the particular phase of the law they wished stressed. Otherwise we think the correct general instructions of the court should be held to be a sufficient compliance with the statute.

Moreover, if it can be said from the court's refusal to give the requested instruction that the court held as a matter of law that the plaintiff was not engaged in interstate commerce, the ruling was correct. We have carefully examined the large number of federal cases, each decided on its own particular facts, cited by counsel for the respective sides. As was said by Mr. Justice McKenna in delivering the opinion in Industrial Accident Commission v. Payne, 259 U. S. 182, 42 Sup. Ct. 489.

"We may say of them at once that a precise ruling, one that enables an instant and undisputed application, has not been attempted to be laid down."

Without reviewing the cases it is sufficient to say that the facts disclosed by the record do not bring the case under operation of the federal act. The engine was primarily used in hauling a passenger train between two points in the state and had been placed in the company's shops for repair between trips. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished one trip and had not yet begun upon any other. At the moment of the injury it was not engaged in either interstate or intrastate commerce. In these circumstances, it cannot be said that the plaintiff was engaged in interstate commerce at the time of his injury merely because it was shown that interstate passengers occasionally rode on this intrastate train and that it carried United States mail addressed to points beyond the borders of the state.

The refused instruction of which counsel complain in their next assignment of error was to the effect that if the company purchased a prossering machine or mandrel of a well known and reliable company with an

established reputation as a dealer in railroad tools and supplies and the defect was latent so that no one but a mechanic or a skilled worker in iron could have discovered it by careful examination, the railroad company would not be guilty of negligence in furnishing the prossering machine for the use of its employes.

We have discussed this question at considerable length elsewhere in this opinion. By reference to this discussion and the rule announced as governing this branch of the case, it will be seen that this instruction does not correctly state the applicable principle of law. This is sufficient ground for refusing to give it.

Furthermore we cannot agree with counsel for plaintiff in error that the plaintiff's evidence shows that if there were any defects in the prossering machine it was a latent defect. There was evidence from which it might have been fairly inferred by the jury that the prossering pin was defective and that the defect could not have been discovered by the plaintiff while in the fire box of said engine, but could have been known by the defendant by the exercise of due and proper diligence. In our view the evidence reasonably sustains the judgment upon this theory.

The instructions given by the court of which counsel complain in their next assignment of error are paragraph 3 A. and instructions Nos. 13 and 14 given to the jury.

Of these instructions it is sufficient to say that we have examined them carefully in connection with the entire charge of the court, and are of the opinion that the instructions given, when construed together, state in general terms with substantial accuracy the law applicable to the issues joined by the pleadings and evidence. Under the sections of the statute hereinbefore referred to, this, in the absence of a request for special instructions, is all that was required of the court.

The consideration of the remaining assignment of error, excessive damages appearing to have been given under the influence of passion and prejudice, requires a brief examination of the record. In passing upon the motion for a new trial, the court ordered a remittitur to be filed in the sum of $10,000, the order being as follows:

"Now on this 26th day of November, 1921, this cause comes on for hearing on a motion for a new trial. It is the order of the court that the plaintiff file a remittitur in the sum of $10,000, within reasonable time from this date. Upon the plaintiff's failure to file the above stated remittitur, the motion for a new trial will be sustained."

The plaintiff, as we have seen, did file two separate remittiturs, in the aggregate sum of $5,000, whereupon the court, without modifying the above order or otherwise explaining his action, entered judgment in favor of the plaintiff for $25,000.

Counsel for plaintiff seek to explain in their brief this action of the court as follows:

"Be it said that in deference to this motive and desire that he (the court), after mature consideration of all the facts and circumstances incident to and surrounding the trial and after mature deliberation, vacated his former order and rightfully permitted, after a reduction of $5,000, had been made, a judgment to be filed for $25,000."

We are unable to find anything in the record that seems to us to justify the conclusion that the trial court vacated or modified the former order after mature deliberation. The inference we gather from an examination of the record is that the trial court was of the opinion that a judgment for $20,000 was ample to compensate the plaintiff for his injuries and that the judgment for a greater sum, in the face of the order hereinbefore set out, was entered by inadvertence or mistake.

Taking this view of the matter, we think the order requiring a remittitur in the sum of $10,000 should stand and that a new trial should be granted unless the order is complied with within a reasonable time after receiving the mandate from this court.

Counsel for plaintiff in error insist, however, that a verdict for $20,000 is excessive and should be still further cut down and cite several cases where this court has required remittiturs on account of the verdicts being too large.

We do not agree with counsel in this proposition. While the verdict of $20,000 is liberal, we do not think, in the circumstances of this case, that it is excessive. Owing to the high cost of living, the greatly increased earning capacity of skilled mechanics, and other conditions prevailing for the past several years, this court and the courts generally have been allowing larger verdicts to stand. In view of this and the action of the court in approving a verdict for $20,000, we decline to interfere with it in the absence of any specific showing that it was the result of passion and prejudice.

Except as herein pointed out, we believe

the defendant was granted a fair and impartial trial and that the record is free from any prejudicial error.

For the reasons stated, the cause is remanded to the trial court, with directions to require a remittitur as herein indicated within a reasonable time, and that upon failure to file same a new trial shall be granted.

JOHNSON, C. J., and McNEILL, KENNAMER, and NICHOLSON, JJ., concur. COCHRAN, J., dissents.