(No. 6104. June 2, 1934.)

GEORGE P. CLARIS, Appellant, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Respondent.

[33 Pac. (2d) 348.]

Joseph H. Peterson, Walter H. Anderson and Milton E. Zener, for Appellant.

George H. Smith and H. B. Thompson, for Respondent.

BUDGE, C. J.—March 30, 1933, appellant instituted this action under the Federal Employers' Liability Act for the recovery of damages in the sum of $35,000 for the loss of his eye by reason of the alleged negligence of respondent.

Appellant, an employee of respondent, working as a machinist in the shops at Pocatello and while engaged in greasing a rod bushing as a part of the repair of an engine

used in interstate commerce, turned a lever or valve to actuate the operation of a grease gun built and maintained by respondent and located in its auxiliary machine-shop and a volume of grease, water, metal shavings and metal borings came from the grease gun with great force, striking appellant in the face and eyes, particularly in the left eye, and particles of metal, grease, water, etc., became imbedded in and under the surface of appellant's left eye and as a result he became blind and it was necessary to remove the eye from the socket. The complaint contained allegations of negligence in the construction of the grease gun to the following effect: That there was no manner of ascertaining the amount of pressure in said grease gun when the air was turned on, and that there was no way to regulate the pressure thereon and the air pressure supplied to the gun varied; that the grease gun was not equipped with any spring or locking device by which dangerous or excessive amounts of air pressure could be regulated, stopped or held; that there was permitted to accumulate in the air and therefore travel into the chamber of said grease gun, behind and in front of the piston, water, grease, and other substances, which would come out with great force and violence upon air being applied; that the piston used in said grease gun was inadequate and did not fit the cylinder snugly and permitted substances to accumulate in the cylinder in back and in front of said piston; that there was permitted to condense in the air-pipes and tanks and in said grease gun water by condensation and no device was attached to said grease gun for draining said water from the pipes, tanks, and said grease gun, which water would come out with great force and violence when the air was applied, there being no device for the regulating of the air pressure; that the grease was so kept that it was permitted to become impregnated with dirt, ashes, steel and other filings, and without the same being removed therefrom or any inspection for that purpose was put in the grease gun. These allegations were denied by respondent and the defense of assumption of risk

was pleaded. After the court had announced its intention to direct a verdict for respondent, appellant moved to amend the complaint to allege the following:

"That said defendant was further negligent in that at the time of said accident, the said defendant well knew that water was in said grease gun and failed to notify the plaintiff thereof or of the danger of using the same in said condition."

At the close of appellant's case respondent interposed a motion for nonsuit to the effect that no negligence had been established as against respondent, which motion was denied. At the conclusion of all the evidence respondent moved for a directed verdict, the motion being in part as follows: "first, that the evidence is insufficient to establish that the plaintiff was engaged in interstate transportation or commerce within the contemplation of the Federal Employers' Liability Act at the time of the occurrence complained of; second, that it appears from the undisputed evidence that water was placed in the grease gun, and that the placing of water in the grease gun was the proximate cause of the plaintiff sustaining the injury to his eye and without which it would not have happened; and third, and finally to recapitulate the grounds stated in the motion for nonsuit and making that apply to all of the evidence for the entire record as it finally is in place of merely at the end of the testimony as appearing at that time in the evidence; that the evidence is insufficient to support a finding that the defendant knew, or was charged with notice that the instrumentality as operated and employed by the defendant might probably, probable being the legal test and not probably, or even possibly fail in the respect alleged in the complaint causing any injury to anyone similar to this, or to the plaintiff in particular, or one of a class who might be injured."

The appeal prosecuted seeks a review of the action of the trial court in granting the motion of respondent for a directed verdict.

Appellant specifies and relies upon five assignments of error, the first two being predicated upon the action of

the court in granting respondent's motion for a directed verdict, the third attacks the action of the trial court in refusing to permit appellant, at the conclusion of all of the evidence, to file an amendment to the complaint, and the last two assignments involve the action of the court in directing a verdict for the reason that the evidence was sufficient to establish all of the material allegations of the complaint, and that the court erred in directing a verdict in favor of respondent. All except the third assignment of error may be discussed together for the reason that the principal question here is whether or not there was any evidence of actionable negligence upon the part of respondent. The rule, we think, is that in a motion for nonsuit or directed verdict the evidence must be construed in the light most favorable to plaintiff. It is only where there is an entire absence of testimony tending to establish the case that a nonsuit may be properly ordered or a directed verdict granted. Where the question depends on a state of facts from which different minds may honestly draw different conclusions on that issue the question must be submitted to the jury for determination. Where facts are disputed or inferences therefrom are reasonably disputable, the question is one for the jury. (*Brown v. Jaeger,* 46 Ida. 681, 271 Pac. 464; *Bean v. Katsilometes,* 50 Ida. 485, 298 Pac. 363; *Wyland v. Twin Falls Canal Co.,* 48 Ida. 789, 285 Pac. 676; *Cooper v. Oregon Short Line R. R. Co.* 45 Ida. 313, 262 Pac. 873; *Pilmer v. Boise Traction Co.,* 14 Ida. 327, 94 Pac. 432, 125 Am. St. 161, 15 L. R. A., N. S., 254; *Adams v. Bunker Hill & Sullivan Min. Co.,* 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844; *Robinson v. Belmont-Buckingham Holding Co.,* 94 Colo. 534, 31 Pac. (2d) 918; 64 C. J. 407; *Petres v. Alexy,* 104 Pa. Super. Ct. 93, 157 Atl. 624; *Jester v. Philadelphia B. & W. R. Co.,* 267 Pa. 10, 109 Atl. 774; *Slocum v. Erie R. Co.,* 47 Fed. (2d) 216.)

From an examination of the record we are unable to reach any other conclusion than that there is a sharp conflict in the evidence as a whole and particularly as hereinafter pointed out, namely: as to whether the grease gun was properly constructed; as to whether it was equipped

with a spring or safety device to regulate the air pressure for its use without injury to employees, the duty resting upon the master, not only to furnish safe tools, but likewise to keep them safe. (4 Thompson on Negligence, sec. 3995; 4 Labatt on Master and Servant, sec. 1498; *Tomaselli v. John Griffiths Cycle Corp.*, 9 App. Div. 127, 41 N. Y. Supp. 51; *St. Louis-San Francisco Ry. Co. v. Stitt*, 108 Okl. 42, 233 Pac. 1073.) Further, there is a conflict as to whether the grease gun furnished was suitable for the purpose for which it was designed to be used; whether there was anything wrong with the compressed air system, and likewise as to whether the grease gun, and the air-tanks and system supplying the pressure for the grease gun could be drained or controlled when condensation took place and water accumulated therein, if it did; as to whether Graves, the assistant roundhouse foreman of respondent, was or was not appellant's foreman and vice-principal of respondent with authority to inform appellant that the grease gun was in a serviceable condition, ready to be used, there being evidence to the effect that Graves had jurisdiction over the grease gun and advised appellant that it was ready for use, and to go ahead and use it, and knew that he was then going to use it in the course of his employment, immediately before the injury was sustained by appellant as hereinabove referred to. There are respectable authorities that support the rule that notice or knowledge of a foreman, of the defective or dangerous condition of an instrumentality used by a workman and resulting in personal injury, is imputable to the principal. (*Ft. Smith & W. R. Co. v. Holcombe*, 59 Okl. 54, 158 Pac. 633, L. R. A. 1916F, 1237; *Lincoln v. Pryor*, 199 Ill. App. 228; *Carnahan v. Chicago, B. & Q. Ry. Co.*, 102 Neb. 76, 165 N. W. 956; 39 C. J. 438.) We think there is sufficient evidence, or inferences that might be legitimately drawn therefrom, to submit to the jury the question of whether or not respondent was negligent in permitting metallic substances to escape from the lathes and become imbedded in the grease used in the grease gun, it being established that it was the metallic substances, pieces of metal, brass, in the grease that caused appellant to lose his

eye. The burden of proof was upon respondent with respect to the assumption of risk. (*Payne v. Castille*, (Tex. Civ. App.) 244 S. W. 222; *Chesapeake & O. Ry. Co. v. Winder*, 23 Fed. (2d) 794; *Manning v. Prouty*, 260 Mass. 399, 157 N. E. 364.) Assumption of risk becomes a question of law only in a clear case. Where there is a doubt or any inferences from which a doubt may be drawn from the evidence the question becomes one of fact for the jury. (*Mumma v. Philadelphia & R. Ry. Co.*, 275 Pa. 277, 119 Atl. 287; *Lehigh Valley R. Co. v. Skoczyla*, 278 Fed. 378; *New York, New Haven & Hartford Ry. Co. v. Vizvari*, 210 Fed. 118, 126 C. C. A. 632, L. R. A. 1915C, 9.)

There is no merit in the contention that respondent was not engaged in interstate commerce.

▄▄▄▄ Discussing assignment of error number three, namely that the court erred in refusing to permit the appellant to amend, respondent urges that the ruling of the trial court was correct, first on the ground that the motion to amend was made after the court had directed the jury to return a verdict for respondent, it appearing however that the motion to amend was made before the jury retired; second, that the amendment raised a new issue, of which respondent was not advised in advance of the trial. We are not disposed to hold that either of the objections so urged are tenable, provided the amendment was material and made for the purpose of presenting more clearly the issues in controversy. Under I. C. A., sections 5–904 and 5–905, great liberality is required in the allowance of amendments to pleadings in the furtherance of justice between the parties. (*Dunbar v. Griffiths*, 14 Ida. 120, 93 Pac. 654; *Kroetch v. Empire Mill Co.*, 9 Ida. 277, 74 Pac. 868; *Kindall v. Lincoln Hdw. & Imp. Co.*, 10 Ida. 13, 76 Pac. 992; *Mole v. Payne*, 39 Ida. 247, 227 Pac. 23; *Hoy v. Anderson*, 39 Ida. 430, 227 Pac. 1058.) We are not of the opinion that the amendment raised a new issue, particularly in view of the fact that respondent in order to exculpate itself introduced evidence to establish the fact that water was placed in the grease gun by its own employees, unknown to appellant, and the proposed amendment was for the purpose of incorporating

this fact into the complaint. Furthermore, respondent makes no contention that it was taken unaware or by surprise by reason of the proffered amendment. We are of the opinion that the amendment should have been allowed.

From what has been said it follows that the judgment must be reversed and it is so ordered with instructions to grant a new trial.

Costs awarded to appellant.

Givens, Holden and Wernette, JJ., concur.

Morgan, J., concurs in the conclusion reached.